Duncan v. Magette.

no right to the inheritance, and, consequently, no standing in court; for it is only as heir that he claims the estate. His title having failed, it results that he is wholly without right to maintain this action. It does not become necessary to inquire further in this case respecting the rights of the appellees. The court held rightly that the appellant was without title; and as he was the plaintiff, the proper judgment which should have been rendered was, simply, that the case be dismissed, and such will be the judgment here rendered.

Reversed and dismissed.

### JOHN DUNCAN v. J. J. MAGETTE.

An action for a certain sum of money paid to the defendant at his request, to be returned on request with lawful interest, is not supported by evidence that the plaintiff made a special deposit of the amount with the defendant to keep for him.

See the opinion for remarks as to the legal effect of a general deposit in a bank, or special deposit with one not engaged in the business of money dealing, for safe keeping.

A demand is necessary to be made for money specially deposited for safe keeping before suit is brought.

If the allegations of the plaintiff's petition are put in issue by one of the defendant's pleas, the plaintiff cannot give in evidence the allegations of another of the defendant's pleas in order to maintain his cause of action.

That the plaintiff is insolvent, does not constitute a qualification or exception to the clause in the statute concerning discount and set-off, which provides that, "if the suit be founded on a certain demand, the defendant shall not be permitted to set-off unliquidated or uncertain damages, founded on a tort or breach of covenant on the part of plaintiff."

A court of equity will not grant such a remedy, by extending it to a case positively prohibited by the law; though it will do so by virtue of its inherent power, in the advancement of the spirit of the law, in cases of mutual demands which cannot be set off under the statute, in cases of insolvency of the plaintiff.

Duncan v. Magette.

REHEARING.

The word "debt," in the statute referred to, is used, in a general sense, to denote any sort of promise or obligation to pay money, such as open accounts, notes, bills, bonds, judgments, and the like. The word "discount," it is presumed, was also used in its most general sense, which embraces both "a defalcation in an action," and a "set-off."

The term "certain demand," used in the fifth section, has the same meaning as the word "debt," as it is used in that and other sections of the act.

The doctrine of reconvention permits exceptions to the rule prescribed in the fifth section of the act concerning discount and set-off, and limits their application to matters necessarily connected with the main action, and incident to the same. These limitations cannot be abandoned without producing inextricable confusion.

See the opinion for the views of Mr. Justice Roberts as to what influence on judicial action is due to a sense of justice, as contra-distinguished from law. The relations of abstract justice and law considered.

APPEAL from Matagorda. Tried below before the Hon. James H. Bell.

This was a suit brought on the 28th day of March, 1857, by John J. Magette against John Duncan, for the sum of $730, with interest thereon from the 1st day of March, 1856, the date of the alleged promise. The defendant demurred to the petition, and answered to the facts by a general denial, and pleaded that the plaintiff, on the 9th day of August, 1856, whilst acting as his overseer, wantonly, and without lawful excuse, killed a certain slave of the defendant, of the value of $1500, "which he pleads in reconvention," and prayed for judgment for the same. The answer stated that after the unlawful killing aforesaid, the defendant refused to pay to the plaintiff any sums of money received or held by him, the same being far less in amount than the value of said negro. The defendant excepted to the sufficiency of this plea, which was sustained. The court refused the charge asked by the defendant set forth in the opinion, and also refused to give the following, also asked by the defendant, viz : " If the jury believe, from the evidence, that a special deposit was made with defendant, by plaintiff, of the amount in controversy, for safe keeping, and not as a loan, that plaintiff cannot recover unless a demand on defendant for the delivery and return of the same

Duncan v. Magette.

before suit brought, has been proved by plaintiff." On the trial, the plaintiff offered to read from the answer of the defendant which set up damages from the loss of the negro, to prove a demand and refusal, &c. To which the defendant objected, because he had put in issue, by a general denial, all the allegations of the petition. The objection was overruled, and the plaintiff read in evidence the following portion of the answer: "This defendant refused, as well he might, to pay over to said plaintiff any sums of money received or held for him." The court instructed the jury that "if the plaintiff placed the sum of money claimed in his petition in the defendant's hands, and it has not been paid back to the plaintiff, the plaintiff is entitled to recover it in this suit."

Verdict for the plaintiff for $730, and judgment was rendered accordingly, with interest from the date of the judgment. The other facts appear from the opinion.

*Ballinger & Jack*, for the appellant.

*G. Quinan*, for the appellee.

ROBERTS, J.—The allegation of the petition, upon which a recovery is sought, is, "the plaintiff paid to the defendant the sum of seven hundred and thirty dollars at his request, which sum of money the defendant promised to return to plaintiff whenever thereafter requested, with lawful interest on the same." There could be no doubt about what was meant by this averment, but for the word "paid" being used in it. Its use might imply that there was an antecedent debt, or, had the transaction been between merchants, that it was treated as a charge in mutual running accounts. The balance of the averment, however, shows that it was not a payment literally, but a loan of money to be returned with interest on demand.

The proof in support of it was an admission by both parties that "plaintiff had deposited with defendant to keep for him $730 in Alabama money."

This evidence was objected to by defendant below, because it

proved facts different from those alleged in the petition, which objection was overruled by the court.

For the purpose of raising the same question in another way, the defendant asked the court to charge the jury that "if the jury believe from the evidence that the plaintiff made a special deposit with the defendant, of the nominal amount of $730 in Alabama bank bills, and that there is no other proof of any indebtedness or receipt of money from defendant to plaintiff, the evidence does not sustain the cause of action, and the jury must find for defendant."

We think the court erred in this ruling. For if the jury should have been satisfied that it was a special deposit for safe keeping, as the proof seemed to indicate, then the allegation of the petition of a loan on interest was not met by the proof.

A general deposit of money in a bank creates an indebtedness on the part of the bank, and a liability to pay back the money without interest. The object of the depositor is the safe-keeping of the money; and the consideration upon which it is received by the bank is, that it may be used until needed. It loses its character of bailment and becomes a loan. (Edwards on Bailment, 66.) The bank is liable for the money absolutely, however it may have been lost. And this is the ordinary mode of safe-keeping by a bank. The case, however, is different with a special deposit in a bank. (Com. Bank of Albany v. Hughes, 17 Wend., 100.) There the thing deposited is expected to be kept and re-delivered.

So, as matter of fact, a deposit of money, made with a farmer, or any one not engaged in the business of money dealing, for safe-keeping, would usually be a special deposit, and the party receiving it would not be liable for its loss, unless he were guilty of gross negligence. (Edwards on Bailments, 67; Parsons on Contracts, 572.)

In this case the evidence shows the deposit was made by the overseer with his employer; that it was made for safe-keeping, to be re-delivered on request. Such facts, unexplained, would show it to have been a special deposit; and if the identical Alabama money had been lost while it remained with Duncan, it would

have been Magette's loss, unless Duncan had been guilty of gross negligence in keeping it. As they may have been explained by other proof to have a different meaning, it was perhaps not error in the court to admit them in evidence; but certainly the jury should have been permitted to determine whether or not the facts showed that it was a special deposit. If they had believed it so to be, they must have found against plaintiff; for a special deposit would not correspond with the allegations in the petition, of a loan upon interest.

Another question in the case is, admitting it to have been a special deposit for safe-keeping, was a demand necessary before bringing suit? We think so. Until demand made, it was not Duncan's duty to re-deliver; and he can not be in default until it is so made his duty. This question is incidentally discussed and this rule deduced, after considerable research, in the case of Mitchell v. McLemore, (9 Tex. Rep., 151.)

Another point decided in the case was, that it was proper to permit the plaintiff to give in evidence, the allegations of one plea to maintain plaintiff's cause of action put in issue by another plea. This would make one plea destroy another, and virtually abolish all double and inconsistent pleading. Our statute authorizes the defendant to plead as many several pleas as may suit his own convenience. The action of the court in admitting the plea to be read as evidence was error. (Hart. Dig., Art. 688; authorities, English and American, collected in Hill & Cowen's Notes to Philip's Ev., vol. 1, pp. 609, 610.)

The defendant pleaded as an equitable offset, that Magette being his overseer, without any just cause, killed one of his (defendant's) slaves of the value of fifteen hundred dollars; and that said Magette was a transient person, and had no visible means, within the knowledge and belief of the plaintiff, sufficient to satisfy the said damage done to the plaintiff by said tort.

This is hardly a sufficient allegation of insolvency, or of his non-residence. (Hatchett v. Gray, 7 Tex. Rep., 551.) Admitting it was, we do not think the plea a good one. Our statute prescribes "that when any suit shall be commenced and prosecuted, in any court within this republic, for any debt due by

judgment, bond, bill, or otherwise, the defendant shall have liberty, upon trial thereof, to make all the discounts he can against such debt; and upon proof thereof, the same shall be allowed in court." Again: "and when the defendant may have a claim against the plaintiff, similar in its nature [but they need not be of the same degree] to that of plaintiff, he shall be permitted to file in his answer a plea of reconvention, setting forth the amount due him," &c. And again: "that if plaintiff's cause of action be brought on a claim of unliquidated or uncertain damages founded on a tort or breach of contract, the defendant shall not be permitted to set-off or discount any debt due him by the plaintiff; and if *the suit be founded on a certain demand, the defendant shall not be permitted to set-off unliquidated or uncertain damages, founded on a tort or breach of covenant on the part of plaintiff.*" (Hart. Dig., Arts. 606, 609, 610.)

These clauses of the statute contain the general power given to the court to allow discounts and set-offs, with the limitations and restrictions of that power.

The case now before us falls clearly under the last restriction. The plaintiff has sued for a certain demand—seven hundred and thirty dollars, loaned money, and defendant attempts to set-off against this, uncertain damages founded on a tort—committed by killing his slave. This restriction has been modified somewhat, by the construction given to the word reconvention, used in this statute, in cases where the demand and the tort were a part of, or grew out of, or were connected with, the same transaction. (Walcot v. Hendrick, 6 Tex. Rep., 406.) This was by giving to that term the effect given to it in the civil law of Spain, by its being used in our statute,—it being a word peculiar to the civil law. We think this construction has been sufficiently liberal already.

It is now proposed to add another qualification or exception to this restriction by preventing its operation in case the plaintiff be insolvent. This exception is not contained in the statute; nor is such a case embraced within the scope of the general power granted to the court to allow discounts. (Art. 606.) And therefore if it be exercised by the court, it must derive the power from some source, other than the statute. A court of equity will set-

off mutual demands, which cannot be set-off under the statute, in case of insolvency of the plaintiff. (Lindsay v. Jackson, 2 Paige's Ch. Rep., 581; Tribble v. Taul, 7 Monroe, 456; Simpson v. Hart, 14 John. Rep., 73.) This is from an inherent power of a court of equity, independent of the statute allowing off-sets. It furnishes a remedy by permitting a cross action. (Castro v. Gentiley, 11 Tex. Rep., 28.) This is a remedy in aid of the law, and in the advancement of its spirit, in cases where its letter might permit an irreparable injury. But can it be truly said that a court of equity would be granting a remedy in aid of the law and in the advancement of its spirit by extending it to a case positively prohibited by the law? Our law positively prohibits the application of a set-off arising upon a tort to a certain demand. The cases of uncertain damages relied on by defendant arose out of contracts not torts. (8 Paige Rep., 504; 3 Humph., 220.) Such is not now regarded to be the province of a court of equity. If it be said that the law did not contemplate a case of insolvency in this provision, it may be answered, that upon the same reasoning every rule of law, however absolute or unqualified, may have implied exceptions annexed to it until it will almost cease to be a rule at all.

We think then that the statute prohibits this plea, and that the court below did not err in overruling it.

Judgment reversed and cause remanded.

Reversed and remanded.

The counsel for the appellee applied for a rehearing.

ROBERTS, J.—The zeal and ability with which a change of opinion is urged, by the counsel on both sides, make it proper in this case to give a further explanation of the views upon which the opinion is founded.

Each party presents a case, strongly demanding the claims of justice in its behalf, abstractly considered. The plaintiff below shows that he has money in the hands of the defendant which he has the right to demand as his own, and urges that this is the mat-

ter of substance to be regarded by the court; that whether the proof showed the transaction to be strictly speaking a loan of money or a special deposit of bank bills, the substance of the matter is, in justice, the same; that if it be a special deposit a previous demand was only material in reference to costs, the suit being a demand; and if a demand was necessary, the failure to allege it on the part of the plaintiff is cured by its being admitted in one of the pleas of defendant although denied generally in another. This, it is admitted presents a strong case, invoking justice in its behalf, and unless the plain and inflexible rules of law stand in its way, the natural inclination of every mind must be to yield to it. On the other hand, the defendant claims damages to a much larger amount than the money of plaintiff in his hands, to which he is entitled by reason of the trespass of plaintiff upon his property, and that plaintiff being a transient person and not able to respond in damages for said trespass, he will entirely lose the damages to which he is entitled, if he is compelled to pay out the money in his hands, and that therefore his retention of the money is his only means of redress. Surely the defendant may invoke the claims of justice (abstractly considered) in his behalf, with a force and plausibility not surpassed by the case of the plaintiff. Although the counsel on both sides rely upon the rules of law as respectively presented by them, it is obvious that the great argument, whether expressly developed or not, by which those rules are sought to be discovered, interpreted and enforced, consists in an appeal to the sense of justice of the court. The opinion of the court in this case does not yield to the force of that appeal. Having written it, I avail myself of the opportunity afforded by this application, to present my own views upon the foundation and force of this appeal to the sense of justice of the court, whether used as an influencing consideration, in interpreting and enforcing the rules of law, or directly urged as the basis of judicial action. A frequent recurrence to first principles is absolutely necessary in order to keep precedents within the reason of of the law.

Justice is the dictate of right, according to the common consent of mankind generally, or of that portion of mankind who may be

associated in one government, or who may be governed by the same principles and morals.

Law is a system of rules, conformable, as must be supposed, to this standard, and devised upon an enlarged view of the relations of persons and things, as they practically exist. Justice is a chaotic mass of principles. Law is the same mass of principles, classified, reduced to order, and put in the shape of rules, agreed upon by this ascertained common consent. Justice is the virgin gold of the mines, that passes for its intrinsic worth in every case, but is subject to a varying value, according to the scales through which it passes. Law is the coin from the mint, with its value ascertained and fixed, with the stamp of government upon it which insures and denotes its current value.

The act of moulding justice into a system of rules detracts from its capacity of abstract adaptation in each particular case; and the rules of law, when applied to each case, are most usually but an approximation to justice. Still, mankind have generally thought it better to have their rights determined by such a system of rules, than by the sense of abstract justice, as determined by any one man, or set of men, whose duty it may have been to adjudge them.

Whoever undertakes to determine a case solely by his own notions of its abstract justice, breaks down the barriers by which rules of justice are erected into a system, and thereby annihilates law.

A sense of justice, however, must and should have an important influence upon every well organized mind in the adjudication of causes. Its proper province is to superinduce an anxious desire to search out and apply, in their true spirit, the appropriate rules of law. It cannot be lost sight of. In this, it is like the polar star that guides the voyager, although it may not stand over the port of destination.

To follow the dictates of justice, when in harmony with the law, must be a pleasure; but to follow the rules of law, in their true spirit, to whatever consequences they may lead, is a duty. This applies as well to rules establishing remedies, as to those establishing rights. These views will, of course, be understood as

relating to my own convictions of duty, and as being the basis of my own judicial action.

The first proposition in the opinion is that the cause of action as alleged in the petition is a loan of money upon interest. Upon reading the petition, that is the construction which would most naturally be given to the transaction set out and described. A special deposit of bank bills is a different thing entirely. It confers different rights, and imposes different obligations on the parties respectively, and is essentially different in all parts of the transaction. In the case of the loan, the plaintiff delivers the money and defendant promises, at all events, to pay back that amount on request with interest. In the case of the special deposit, the plaintiff delivers the bank bills, and the defendant promises to return them on demand; or, if lost by his gross neglect, to pay their value. The evidence was such as tended to establish a special deposit, and, therefore, the instruction asked by the defendant should have been given. For if the transaction was proved to have been a special deposit of bank bills, it could not have been a loan of money upon interest. The real transaction, however, may have been that the plaintiff gave to the defendant the bank bills as money, to use it as his own, under a promise to return that amount of money without interest upon request. In such case the property in the bills would be changed at once, and a debt would be created from defendant to plaintiff. This would be a loan without interest. But it was not incumbent on the court to hold that the evidence indisputably established that this was the real transaction. It should have been left to the jury to say whether the evidence established the one or the other.

The second proposition in the opinion is that, admitting the evidence to have established it to have been a special deposit for safe keeping, a demand was a material fact to constitute a cause of action. Mr. Justice Story, in his work on Bailments, says: " No right of action, however, accrues in any case against the bailee, unless there has been some wrongful conversion, or some gross negligence on his part, until a demand made upon him, and a refusal by him to deliver the deposit." (§ 107; 9 Johns. R., 361; 2 Greenleaf R., 308.)

The amicable demand of the civil law system, as adopted and practiced in Louisiana, is a different thing. It is a part of the remedy after the cause of action has already matured, and although it might then be only a question of costs if no such amicable demand was made before suit, the rule of the common law is clearly different, and we have no statute changing it. With us it is not a matter pertaining to the remedy. It is a fact which constitutes a material ingredient in the cause of action; even as much so as any other fact. If the plaintiff, who sues in such a case, is allowed to recover a judgment upon payment of the costs, the rule of law is changed. The defendant may be exposed to the discredit of being sued in court, may have to attend court and employ counsel in his defence, (as every litigant should do, however plain he may deem his defence to be,) when he had been in no default whatever, and was ready, upon demand, at any time to redeliver the thing deposited. Such a suit, without a previous demand, would be vexatious to the defendant, and an attempted abuse of and trifling with the coercive authority of the law; for which the mere payment of the costs would be no adequate redress.

It is contended that if a demand was necessary, it was admitted in one of the special pleas of defendant, which was read in evidence, although objected to. The general issue was also pleaded. That one of two inconsistent pleas can not be thus used to disprove the other, is well established in England under a statute similar to ours, on the subject of the right to plead several pleas. (Gould on Pleading, 431, and authorities cited.) Without here discussing the grounds of this construction and its applicability to our system as well as to that of England, it will be sufficient to refer to the case in which the question has been decided by this court. (Fowler v. Davenport, 21 Tex. R., 632–3.)

These rules of law by which the plaintiff's case has been determined, and upon which his judgment has been reversed, are all believed to be well settled, plain and imperative. It is more important that they should be preserved than that the abstract justice of any one case should be obtained by swerving them to meet its peculiar features.

The proposition of the opinion of which the defendant below

complains, is in substance that a tort cannot be set off against a debt, although the person committing the tort be insolvent and a transient person. The leading object of our statute "allowing discounts and set offs," is expressed in the first section. When any suit for a " debt due by judgment, bond, bill or otherwise," be brought, the defendant may "make all the discounts he can against such debt." The word debt in this statute is used in a general sense to denote any sort of promise or obligation to pay money, such as open accounts, notes, bills, bonds, judgments, and the like. The word discount, it is presumed, was also used in its most general sense, which embraces both "a defalcation in an action," and a " set off." (1 Bouv. Law Dic., 428.)

The 2d, 3d and 4th sections of the act furnish rules for the rendition of the judgments in the various contingencies that may happen in allowing such discounts to be made to such debts.

The 5th section restricts the operation of the act by prohibiting torts and breaches of covenant from being set off against such debts, and such debts from being set off against torts and breaches of covenant.

The 6th section repeals all laws " contrary to the provisions of this act." The term " certain demand," used in the 5th section, means then nothing more or less than the word debts, as it is used in the same and other sections of the act. The cause of action contained in the petition in this case is such a debt. The statute furnishes an unqualified prohibition against its being opposed in set off by a tort. (Hart. Dig., p. 222.)

If debts and torts could be set off against each other, and torts set off against torts, it would lead to strange results. The strong would collect their own debts off of the weak by taking their property into possession, retaining it until converting it otherwise, and when sued for the trespass adjust the matter by setting off their debts. Assault and battery, or wounding, might be met by a set off for the slander that had provoked it. So libel against libel might be set off. Such a state of things it was doubtless the object of the restriction in the statute to avoid. The insolvency of one of the parties could not justify, obviate or diminish the evil.

Partly upon the use of the word reconvention in the 4th section, the act has been construed to introduce the plea of reconvention as it is known in the civil law. (Walcot v. Hendrick, 6 Tex. Rep., 415; Egery v. Power, 5 Tex. R., 506.) The case last quoted, in which this construction was adopted, lays down the extent and limits of the plea of reconvention in accordance with the civil law authorities of Louisiana. By that decision it is held " that the demand instituted in reconvention must be necessarily connected with and incidental to the main action." (Id., 505.) In the case of Walcot v. Hendrick, Chief Justice Hemphill, after taking a general view of the whole subject, says: " Upon the whole, we conclude that the defendant may plead in reconvention, by whatever name the plea may be called, in his defence and for redress, all matters necessarily connected with the main action and incident to the same." (6 Tex. R., 418.) This has ever since been regarded as the settled rule upon the subject, and upon it the practice of the courts has been based. (Bradford v. Hamilton, 5 Tex. R., 58–9; Cannon v. Hemphill, ib., 208.)

It permits exceptions to the rule prescribed in the 5th section of the act, and defines the limits of those exceptions, and the incidents by which they may be determined. If this rule be departed from and the exceptions be extended to meet the apparent equity of each particular case, the restrictions of the act, which are found in the 5th section, will be swept away, and that section will stand upon the statute books without meaning and without force. While the rule under which the exceptions are admitted is too firmly fixed in the practice of the country to be now questioned, the limitations under which it was adopted cannot be abandoned without producing inextricable confusion. If they were, the act " allowing discounts and set offs," would furnish us no definite or certain rule, either as to the character of cases in which discount and set off might be allowed, or of the character of claims, demands, or rights of action which might be made the subject of discount and set off. Its provisions, instead of being guides to enlighten, would be but lures to mislead. The very fact that restrictions were inserted in the act shows the opinion of the legislature that the abstract justice of some cases must yield

17Y

to the consideration of public convenience in the administration of the law. When experience shall have shown that the scope of the act allowing discounts and set offs may be safely enlarged so as to embrace other cases, or classes of cases, doubtless the legislature will curtail or remove the restrictions which they have imposed upon it. That does not pertain to the province of the courts.

A re-examination of this case has but confirmed the conviction more strongly of the importance as well as of the duty of adhering to the well settled rules of law announced in the opinion.

Reversed and remanded.