A. Wright, Respondent, v. E. J. Richmond, Appellant.

St. Louis Court of Appeals, February 23, 1886.

1. Strays—Advertisement.—A failure to advertise a stray animal will not be excused because the owner has claimed the animal and promised to produce proof of ownership.

2. ———— Replevin.—A person who takes up a stray animal and fails to advertise it, as required by law, can not maintain replevin for it against the owner who has taken it from his possession.

3. ———— Possession—Ownership.—Replevin can not be maintained by one who has only a naked possession without any general or special property in the article in suit.

4. ———— Instructions.—In replevin for a mule, an instruction that if the jury believe from the evidence that the defendant's mule was four years old and the mule in controversy was but three years old, they should find for the plaintiff, is erroneous, as commenting on the weight of the evidence.

5. ———— Evidence—Hearsay.—In such action, evidence that the defendant's son had said that he had never seen the animal before, is hearsay evidence, and inadmissible.

6. ———— Misconduct of Judge.—In such action, a remark by the trial judge, made in the presence of the jury, before all the witnesses had been examined, that he would dismiss the suit at the defendant's cost and order the mule into the plaintiff's hands, is error, prejudicial to the defendant, and is ground for setting aside the verdict for the plaintiff.

Appeal from the Scott County Circuit, J. D. Foster, Judge.

*Reversed and remanded with directions.*

Hunter & Brown, for the appellant: The plaintiff in replevin must be the owner or entitled to the immediate and exclusive possession of the thing in controversy. *Melton v. McDonald*, 2 Mo. 45 ; *Pilkington v. Trigg*, 28 Mo. 95 ; *Cross v. Hulett*, 53 Mo. 397. Mere naked pos-

session is not sufficient. *Gartside v. Nixon*, 43 Mo. 138; *Gray v. Parker*, 38 Mo. 160; *Morgner v. Biggs*, 46 Mo. 65. The testimony concerning statements of the defendant's son was hearsay. 1 Greenl. Ev., pt. 2, ch. 5, 114.

THOROUGHMAN, CHRISTIAN & PRIEST, and MARSHALL ARNOLD, for the respondent: If the mule did not belong to the defendant, and he took him from the possession of the plaintiff without the plaintiff's knowledge or consent, as the undisputed evidence shows, the defendant is a trespasser, having no right or claim to the property whatever, and the mere possession of the plaintiff is all that is required to sustain this action. *Smith v. Lydick*, 42 Mo. 209; *Summons v. Beaubien*, 36 Mo. 307.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff, owner of a farm and live stock, had his horses brought from a neighboring range to his farm, in February or March, 1882. A mule, the subject of the present suit, which was unknown to the plaintiff, appeared among the horses, and was turned into the plaintiff's enclosure. Soon afterwards, the defendant saw the animal and claimed it as his property. The plaintiff told him to bring one or two witnesses by whom he could prove his ownership, and the mule would then be delivered up to him. This the defendant undertook to do. About two years then passed without any change in the situation. The defendant sometimes mentioned his claim to the plaintiff, but never produced any witnesses, as promised. He testified at the trial that he had made several efforts to do so, but failed from no fault of his own. In the meantime, the plaintiff took no steps towards posting the mule as a stray, and, in his testimony, explained that this was because of the defendant's claim of the property. Finally, the defendant went to the farm of the plaintiff, in his absence, when the plaintiff's hired man, without any authority from his employer, delivered the mule to the defendant, under a promise of

fifteen dollars, to be paid for the keeping of the animal. It appears that this amount was never paid. The plaintiff thereupon sued in replevin before a justice of the peace, where he obtained judgment, and on the defendant's appeal, again obtained judgment in the circuit court.

There was a good deal of uncontradicted testimony, tending to show that the mule really belonged to the defendant, and had escaped from his enclosure some time before it got into the plaintiff's possession. The plaintiff's recovery seems to have been based on the wrongful taking by the defendant, while the plaintiff was in peaceable possession of the property, without regard to any question of ownership in either party. But the law does not sustain such a supposed right of recovery. Replevin can not be maintained on a mere naked possession, without a general or special property in the plaintiff. *Broadwater v. Darne*, 10 Mo. 277.

It can not be pretended that the plaintiff in this case had either a general or a special property in the mule. He could have acquired a special property in the animal by a compliance with the stray laws ; but this he never attempted to do.

Formerly, the statute imposed a penalty upon any one who should take up a stray and then fail to comply with the provisions of the law. 2 Wag. Stat. 1301, sect. 30. Referring to this statute, it was held in *Bayless v. Lafaivre* (37 Mo. 119), that a party who had taken up a stray and kept it in his possession for a year without complying with the stray laws, was to be considered as a trespasser *ab initio*, and as having no such possession or right of possession as would enable him to recover against another who had received the stray from a third person. The same statutory provision is not now in force, but the policy of the law is unchanged. The stray law is designed to provide a means whereby the owner of animals may not necessarily lose them because they wander away from his premises. It defines what de-

scription of persons may take up a stray, and under
what particular circumstances. It then directs that the
taker up shall, by notices, advertisements, and registra-
tion in prescribed forms, publish the facts, with a de-
scription of the animal, so as to insure the highest
probability that the owner, whoever he may be, will dis-
cover what has become of his property, and where he
may recover it. Compensation is provided for every act
and expenditure involved. Restrictions are thrown
around the taker up, as to the proper care of the stray,
and against his disposal or removal of it, so as to en-
danger the owner's ultimate recovery of his property.
These, and other regulations, are a protection guarantied
by the law to every owner of live stock within the descrip-
tive terms of the statute. A man who takes, keeps, and
uses an animal not his own, and yet embraced in these
protective provisions, is a trespasser upon the legal
rights of the true owner and a violator of the law. The
plaintiff in the present case was a person authorized by
the law to take up and post a stray. The mule in ques-
tion came into his possession within the limitations of
the same law. When he kept the animal within his
enclosure, along with his other stock, he became a
"taker up" of the stray, within the clear intent of the law.
By his failure to take the subsequent steps which the
law commands, he forfeited all claim to any right of pos-
session or special property which would entitle him to
maintain this action,

The plaintiff, however, claims exemption from these
consequences, by reason that he was prevented from
posting the stray by the defendant's claim of the prop-
erty ; and that the defendant is estopped by the same fact
from setting up this defence against the plaintiff's suit.
There is nothing in either point. The duty to post was
one which the plaintiff owed to the public, and from
which the defendant could not absolve him. The plain-
tiff had no right to assume ownership in the defendant,
because of his claim to that effect. A dozen other persons

could have made the same claim, and yet the true owner not be one of them. Should any number of such claims be permitted to imperil the true owner's rights? But it seems that the plaintiff never did in fact admit the defendant's claim of ownership. He refused to deliver the animal, and required the production of witnesses. With what consistency could he deny the defendant's ownership for one purpose, and at the same time admit and aver it as an excuse for depriving the unknown true owner of the protection guarantied to him by the wise provisions of the stray law? No existing law made the defendant's unsupported claim an excuse or justification for the plaintiff's failure to obey the law. His refusal to post the stray was his own voluntary act, and he can not escape its legal consequences. The suggestion of an estoppel against the defendant is equally futile. Had the defendant specially requested the plaintiff not to follow the requirements of the stray law, and the plaintiff's non-action had been in compliance with that request, there might have been some ground for a claim of estoppel. But no such request appears in the record. Indeed, we would not be understood as conceding that an estoppel can, in any case, be created by compliance with a request to violate the law.

Our view of the plaintiff's position necessarily disposes of this case. But this record so abounds in errors on other points, that we would be recreant to our general duty of superintending control, were we to let them all pass unnoticed.

An instruction was given for the plaintiff, as follows :

" The court further instructs you that, if you believe from the evidence that Richmond's mule was four years old last spring, and that the mule in controversy was only three years old last spring, your verdict ought to be for the plaintiff," etc.

This is literally a comment on the weight of the evidence, and was reversible error. The age of the mule was not in issue on the record, and could not, as a legal

conclusion, determine the rights of either party. It was only an incidental fact, from which a rational conclusion might possibly be inferred, as to the indentity of the mule, or the consequent right of possession in one party or the other. It was for the jury to determine what degree of weight that incidental fact should have upon the main issue. But the instruction injected into the minds of the jury the impression made upon the mind of the judge, as to the conclusive weight of the incidental fact, in proof against the ownership of the defendant. Such an instruction is opposed to the whole spirit and meaning of our jury system.

The plaintiff offered as a witness his son, a boy twelve years of age, to prove that, in a conversation between his son and a son of the defendant, no other person being present, and while both were looking at the mule in controversy, the defendant's son said that he had never seen the animal before. The defendant objected to this testimony, as only hearsay, and manifestly irrelevant and incompetent. His objections were overruled, and the testimony was admitted. This was so strange a departure from the most familiar rule of evidence known to courts and lawyers everywhere, that we must forbear any word of comment.

Before all the witnesses had been examined, as the bill of exceptions states, "the court here stated in the presence of the jury, that he would dismiss the suit at costs of the defendant, and order the mule into the hands of the plaintiff." Every one at all familiar with court proceedings knows how easily the average juror takes impressions of the merits of a cause from any manifestation of the judge's opinion of them. It is the first duty of every trial judge, in the presence of the jury, to preserve a strict neutrality, and carefully to abstain from intimating, except through the legitimate channel of his instructions, his opinion as to which way the verdict ought to go. Any other course must deprive the suitor of the most valued privileges pertaining to

the right of trial by jury.   The remarks of the learned judge on this occasion were strongly calculated to impress the jury against the claims of the defendant. Had they been the announcement of an order which he thought it was proper to make, there could be no objection to them on the score of unfairness.   But that they were not such, is indicated by the further progress of the trial.   They were unfair to the defendant, in depriving him of that equal standing with his adversary before the triers of the cause, to which he was entitled by law. No verdict against a party so deprived, should ever be permitted to stand.

The judgment of the circuit court is reversed, and the cause remanded with directions that the circuit court proceed to inquire and find whether the defendant had the right of property or the right of possession only, at the commencement of the suit ; and, also, the value of the property, or the value of the possession, as the case may be, and such damages for withholding said property as may be just and proper.   The said court will thereupon enter judgment in favor of the defendant and against the plaintiff and his sureties, for the return of the property taken, or that they pay the value so assessed, in the discretion of the defendant, or the value of the possession of the same, in case a return can not be had, or shall not be ordered, and for the damages assessed, and costs of suit.   All the judges concur.