CLARENCE A. RYAN, Plaintiff and Respondent, *v.* ALD, INC., a Corporation, Defendant and Appellant.

No. 10874.

Submitted May 10, 1965. Decided October 1, 1965.

Rehearing denied October 11, 1965.

406 P.2d 373.

Weir, Gough & Booth, Helena, Edwin S. Booth (argued), Helena, Ward A. Shanahan (argued), Helena, for appellant.

Vance & Leaphart, C. W. Leaphart, Jr. (argued), Helena, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of Lewis and Clark County in favor of the plaintiff and from an order denying a new trial.

In 1959 the plaintiff, Clarence A. Ryan, decided to establish a laundromat. Norman Dalry, a salesman for the defendant company, Ald, Inc., contacted the plaintiff at the latter's request. ALD is a corporation engaged in the business of selling such items as washing machines, but does not manufacture them. On August 28, 1959, the plaintiff signed a sales agreement for the purchase from ALD of two laundromat washers and two driers. The agreement contained, among others, the following provisions: that the seller makes no warranties with respect to the equipment; that ordinary manufacturer's warranties as to repair and replacement of parts apply; that the seller is not liable for loss or damage resulting from causes beyond its control; that receipt of the equipment by the buyer without objection constitutes waiver of all claims for loss or damage; and that the writing constitutes the entire agreement between the parties.

The machines were delivered on October 1, 1959. The plain-

tiff attempted to install them, but they never functioned properly. He continued to work on them, with the occasional help of others, until December 1960. At that time he turned the matter over to his attorney. On February 17, 1961, this action was filed. A jury rendered a verdict for the plaintiff with an award of $3,415 in actual damages and $7,500 in punitive damages.

The plaintiff was permitted to testify over objection that prior to signing the sales contract, Dalry made the following statement to him: "You don't have to know anything about them [the machines]. When they get in here, we'll show you how to install them; we'll show you how they work." On cross-examination the plaintiff admitted that at the time of contracting he did not expect the company to install the machines; that he intended then and for a considerable period afterward to do the installation work himself. There was no provision in the written agreement committing ALD to install the machines.

The plaintiff testified that after being unable to get the machines working he began a correspondence with the ALD main office in Seattle, Washington, in an effort to secure aid from them. They sent him additional parts and instructions and, on several occasions, had agents visit. However, none of these things remedied the situation. The plaintiff was allowed to testify that on four occasions he was promised by ALD personnel that a qualified man would come out and assist him in putting the machines in working order. No such person ever appeared.

The first question in this case is whether or not the trial court should have permitted testimony by the plaintiff that agents of the defendant asserted before and after the signing of the formal contract that the company would show the plaintiff how to install the machines and how they worked. At the outset it is necessary to establish the theories under which the plaintiff proceeded in this litigation. He tried, first,

to prove that actual damage occurred as a result of the defendant's failure to perform his contract as written and as affected by the law of sales. In other words, plaintiff attempted to show from the writing, and more specifically from the law which controls it, that the defendant had an obligation to see that the machines were properly installed and working. Any assertion that this obligation arose out of a prior, oral contract, separate from the writing, is inconsistent with the plaintiff's case. In fact, there is no case at all for a separate agreement. The plaintiff, himself, testified that at the time of the purchase he intended to do the installation work on his own. In short, testimony as to any prior promise or agreement was irrelevant to the issue of breach of the written contract. Its admission and the admission of evidence of subsequent promises opened wide the possibility of varying or adding to the terms of the writing by parol. This is not to be allowed. Leigland v. McGaffick, 135 Mont. 188, 338 P.2d 1037.

The law controlling a written contract becomes a part of it, and cannot be varied by parol any more than what is written. Rowe v. Emerson-Brantingham Implement Co., 61 Mont. 73, 201 P. 316.

Secondly, plaintiff tried to prove that the defendant was liable for punitive damages as being guilty of fraud in falsely promising to see that the machines would be installed and. working. Punitive damages are not allowable in a case of this kind. R.C.M.1947, § 17-208, provides:

"In any action for a breach of an obligation *not arising from contract*, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." (Emphasis supplied.)

This issue is controlled by our ruling in Westfall v. Motors Ins. Corp., 140 Mont. 564, 374 P.2d 96. In that case the plaintiff alleged that he was fraudulently induced to sign a release agreement, freeing the defendant from further obligations on an insurance policy. We held that under section 17-208 puni-

tive damages could not be awarded. In the case at bar, essentially the same thing is involved, namely, an alleged fraudulent inducement. As to subsequent promises, there would seem to be equally strong reason to deny punitive damages. The suit continues to be one for breach of an obligation arising from contract. The subsequent promises, as well as the prior one, arise out of the same transaction. The later promises are a continuance of the initial one.

Thus, punitive damages not being allowable, any evidence pertaining to them should have been excluded. Therefore, testimony as to prior or subsequent oral promises or agreements was not admissible on this point either.

It is urged that the oral evidence was admissible under R.C.M.1947, § 93-401-17, which provides:

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

This statute is applicable only when the instrument requires construction. First National Bank v. Soil Conservation District, 130 Mont. 1, 293 P.2d 289. Here the contract needs no construction. Its terms are clear. Any obligation to install the machines or put them in working order must, by the plaintiff's own admission, be found in the law applicable to the contract or in a separate agreement. There is nothing in the writing itself pertaining to it.

It is our conclusion that there are no valid grounds for the admission of parol evidence in this case. The trial court erred in doing so to the prejudice of the defendant.

One other matter should be commented upon. It is our view that certain comments of the trial judge were prejudicial to the defendant. We shall not quote the various exchanges between the trial judge, counsel and the witnesses, but shall comment on them.

A trial judge should at all times refrain from any show-

ing of partiality and we quote with approval from Harms v. Simkin, (1959, Mo.App.) 322 S.W.2d 930 at 938:

"In the eyes of the jury the trial judge is the epitome of justice and wisdom. His influence upon the jurors is immense. A trial judge is obligated to maintain strict impartiality as between the adverse parties to a lawsuit. Jurors are quick to detect and respond to his slightest inclination toward or against either side of a lawsuit; to condemn the side which he condemns and to approve the party litigant or the cause upon which he smiles. Wright v. Richmond, 21 Mo.App. 76. It is easy for a trial judge, unintentionally, to prejudice a jury for or against one party or another." The court goes on to admonish: "He must be extremely cautious in his comments, considerate in his rulings, and thoughtful, patient and forbearing in his conduct. Any appearance of partiality, favoritism or persuasion one way or the other is strictly to be eschewed. * * * He must not make comments which could arouse contempt for or suspicion of any party."

The judgment of the district court is reversed and the cause remanded for a new trial.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE CASTLES concur.

MR. JUSTICE JOHN C. HARRISON dissents.

MR. JUSTICE ADAIR dissenting:

I dissent to the foregoing majority opinion on this appeal and reserve the right to hereafter file my reasons for such dissent.