CLARENCE A. RYAN, Plaintiff and Respondent, *v.* ALD, INC., a corporation, Defendant and Appellant.

No. 11196.
Submitted February 6, 1967.   Decided April 26, 1967.
427 P.2d 53.
See also 146 Mont. 299, 406 P.2d 373.

Weir, Gough, & Booth, and Ward A. Shanahan, Helena,. Edwin S. Booth and Ward A. Shanahan (argued), Helena, for appellant.

C. W. Leaphart, Jr. (argued), Helena, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment of $3,696.28 against the

defendant, ALD, Inc., for actual damages arising out of a contract for the sale of laundry equipment.

Respondent, Clarence A. Ryan (hereinafter called plaintiff) entered into a sales agreement with the appellant, ALD, Inc. (hereinafter called defendant) on August 28, 1959, wherein defendant agreed to sell and plaintiff agreed to buy two Westinghouse washing machines and two Westinghouse dryers for the purpose of establishing a "Laundromat." The equipment was delivered in the manufacturer's containers and the plaintiff paid the balance of the full purchase price on receipt from the carrier. Plaintiff undertook to install the equipment himself but was unable to get it functioning properly. There was considerable communication between the plaintiff and defendant concerning the malfunctioning machines including some new parts and instructions. Finally plaintiff attempted to rescind the sale and have his money returned. The rescission was not accepted and plaintiff filed a complaint against the defendant on October 28, 1963, asking for damages. Plaintiff had judgment which the defendant appealed and was granted a reversal and new trial in Ryan v. ALD, Inc., 146 Mont. 299, 406 P.2d 373.

Ryan v. ALD, Inc., supra, decided the following: 1. That this was an action for damages for breach of a written contract; 2. That the terms of the contract were clear and therefore parol evidence was not admissible; 3. That punitive damages were not recoverable in this action; and 4. That the trial judge made remarks which were prejudicial to the defendant. This is an appeal from a judgment for the plaintiff resulting from the second trial.

During the pre-trial conference that preceded the second trial, the presiding judge announced that the case would be retried on the theory that the sales contract carried with it an implied warranty of fitness for use. Defendant objected to this theory on the grounds that implied warranties were expressly disclaimed by the sales contract and that even in the

absence of a disclaimer no warranty could be implied under the facts of this case. At the end of all the evidence presented at the trial the verdict was directed in favor of the plaintiff on the question of liability and the jury was instructed to determine the amount of damages, if any, that were proximately caused by the breach of the sales agreement.

The trial judge ruled that the reverse side of the sales agreement would be excluded from the evidence because the terms printed therein were in difficult to read, small, dim, blue type. While responding to questions asked by counsel, the court indicated that it would change this ruling if a foundation was laid by showing that the plaintiff's attention had been directed to the reverse side of the sales agreement and that he understood what was printed there.

In ruling that the reverse side of the sales agreement was not admissible, the district court ignored the opinion rendered in the former appeal of this case. Ryan v. ALD, Inc., supra ,at 146 Mont. 300, 406 P.2d 374, included the following statement: "* * * The agreement contained, among others, the following provisions: that the seller makes no warranties with respect to the equipment; that ordinary manufacturer's warranties as to repair and replacement parts apply * * *." These were all terms from the reverse side of the sales agreement. In this manner it was impliedly, if not expressly, held that the terms on the reverse side of the sales agreement were part of the contract. This holding became the law of the cast and was binding upon the district judge. O'Brien v. Great Northern R. Co., 148 Mont. 429, 421 P.2d 710.

The observations of the trial judge concerning the readability of the contract terms were pertinent, but it is not the law that a person who seeks to enforce the terms of a contract must first show that the person sought to be charged had both read and understood the contract before signing it. The correct rule is exactly the opposite. A party to a contract cannot avoid its terms merely by saying that he has not read or

understood the obligations contained therein. Guthrie v. Halloran, 90 Mont. 373, 3 P.2d 406. The exception to this rule is that a party to a contract may as a matter of defense show that he was prevented from ascertaining the contents and meaning of a written contract by means of deceit or fraud. Hjermstad v. Barkuloo, 128 Mont. 88, 270 P.2d 1112. If this issue had been allowed to proceed normally, evidence of an express disclaimer would have shifted the burden of going forward with the evidence to the plaintiff who then might have offered evidence that the disclaimer was ineffective. No issue of fraud or deceit was raised at either trial or by the former appeal. Consequently, the former appeal does not prevent consideration of this issue in any subsequent proceedings by reason of the doctrine of the law of the case. O'Brien v. Great Northern R. Co., supra.

The sales agreement does not of itself show that the plaintiff should be excused from knowledge of the terms on the reverse side and therefore it was error to rule that the reverse side should be excluded as a matter of law. The large print at the bottom of the face of the sales agreement, near the place where the plaintiff signed his name, stated the following: "THIS IS AN OFFER TO PURCHASE SUBJECT TO DISTRICT APPROVAL AND CONDITIONS ON THE REVERSE SIDE HEREOF WHICH ARE A PART OF THIS AGREEMENT." In the absence of other evidence, the plain statement just quoted was sufficient to apprise the plaintiff of the terms on the reverse side and to give him the means of ascertaining their contents before signing the agreement.

It was also error to direct the verdict on the theory that the defendant had breached an implied warranty of fitness for use. In so holding the trial judge ignored an express disclaimer of implied warranties on the reverse side of the sales agreement and the applicable law of implied warranties.

Paragraph five of the terms printed on the reverse side of the sales agreement recited the following: "Seller makes no

representations or guaranties, express or implied in respect to any of the equipment covered by this order, except that it will deliver good title to said equipment sold, free from all liens and encumbrances. * * *." We have already held that this and the other terms on the reverse side of the sales agreement should have been placed before the jury. If this disclaimer of implied warranties was in fact a part of the contract between plaintiff and defendant there is no reason why it would not be sufficient to avoid warranties otherwise implied by law.

This case arose from a contract made before the Uniform Commercial Code became effective in Montana. Section 74-325, R.C.M.1947. Therefore, any implied warranty of fitness for use applicable to this case must be founded on the authority of section 74-316, R.C.M.1947, if at all. Section 74-316 provides: "One who manufactures an article under an order for a particular purpose, warrants by the sale that it is reasonably fit for that purpose." Although the trial judge expressly disapproved of it, Harrington v. Montgomery Drug Co., 111 Mont. 564, 111 P.2d 808, is still the law of this state with respect to implied warranties applicable under statute prior to the adoption of the Uniform Commercial Code. The Harrington case, supra, at 111 Mont. 566, 111 P.2d 809, states the rule applicable to this case. "* * * In this state a seller who is not the manufacturer of goods other than provisions for domestic use sold to one who buys for consumption makes no implied warranty of their fitness for the intended use.

"Section 7607 (74-310, R.C.M.1947) provides: 'Except as prescribed by this chapter, a mere contract of sale or agreement to sell does not imply a warranty.' Hence before plaintiff may rely upon an implied warranty she must point to a statute giving her that right."

In the instant case, as in the Harrington case, the defendant is not the manufacturer and this fact alone prevents any liability from being imposed under section 74-316. No liability can be enforced against the defendant in this case on

the theory of a breach of an implied warranty unless it is shown that the attempted disclaimer was not effective and that the warranty is implied by statute.

The course this case has followed to date has called our attention to the following statement, and has made it worthwhile repeating here. "To follow the dictates of justice when in harmony with the law, must be a pleasure; but to follow the rules of law, in their true spirit, to whatever the consequences they may lead is a duty. This applies as well to rules establishing remedies, as to those establishing rights. Whoever undertakes to determine a case solely by his own notions of abstract justice, breaks down the barriers by which the rules of justice are erected into a system, and he thereby annihilates law." Duncan v. Magette, 25 Tex. 245.

Finding error in the proceedings, the judgment is reversed and the cause is remanded for a new trial in conformity with this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE CASTLES concur.

MR. JUSTICE JOHN C. HARRISON, dissenting:

I dissent.

This is the second time that this case has been decided by a jury and unfortunately the second time the respondent has had to bear the costs of the appeal. Here, due to no fault of either the respondent or his attorney, this cost burden becomes his, due to the trial court's deliberate disregard of this court's previous Opinion.

This in my opinion is most unjust. Costs are provided by our statutes and this case is an example of a fair general rule working a hardship in this specific instance. I wish it were possible here to make a different assessment of the costs.

MR. JUSTICE ADAIR, dissenting:

I dissent to the majority opinion rendered in this cause by

374

Associate Justices Stanley M. Doyle, Wesley Castles and by Chief Justice James T. Harrison, and I concur in the above-quoted dissenting opinion by Associate Justice John Conway Harrison in this cause.