**Thomas L. LAIRD, Appellant (Defendant below),**

v.

**Evelyn D. LAIRD, Appellee (Plaintiff below).**

**No. 5070.**

Supreme Court of Wyoming.

July 6, 1979.

Michael McCarty, Cody, signed brief of appellant and Van C. Wilgus, senior law

student, University of Wyoming, College of Law, appeared in oral argument on his behalf.

L. B. Cozzens, Cody, signed brief and appeared in oral argument on behalf of appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE, and ROONEY, JJ.

RAPER, Chief Justice.

This case is concerned with the propriety of granting a motion for partial summary judgment where the validity of an antenuptial contract is challenged on the basis of fraud, deceit, overreaching, lack of understanding, and failure to make a complete disclosure of assets.

The defendant-appellant, Thomas L. Laird (appellant) appeals the district court's grant of a motion for partial summary judgment in favor of the plaintiff-appellee, Evelyn D. Laird (appellee). The Lairds were married in April 1976. On February 15, 1977, the appellee filed a complaint in the district court seeking dissolution of that marriage. In his answer to the divorce complaint, appellant counterclaimed and asked for an equitable division of income received by appellee during the marriage as well as for an equitable division of any appreciation in the value of property owned by appellee during the course of the marriage. Appellee moved for a partial summary judgment only as to the counterclaims of appellant.[1]

Memorandum briefs were filed in the district court by both parties and the record contains interrogatories, depositions, and affidavits of the parties. On October 2, 1978, the district court granted appellee's motion for partial summary judgment.[2] Appellant asserts as errors:

"1. Whether the District Court Correctly [sic] granted a motion for partial summary judgment finding an Antenuptial Agreement valid.

"2. Whether the District Court correctly examined the Antenuptial Agreement with close scrutiny and examining [sic] for fairness and reasonableness.

"3. Whether the District Court, in applying Wyoming law, could have found no material facts in dispute regarding fraud, deceit, lack of understanding or overreaching in the execution of the Antenuptial Agreement so as to justify the Order Granting Partial Summary Judgment and whether the District Court could not have found genuine issues as to material facts regarding full disclosure of assets before execution.

"4. Whether the District Court incorrectly concluded that the Antenuptial Agreement, even if valid, applied to income and appreciation from separately held property over the course of the marriage and thus prevent its consideration in the Court's property settlement procedure."

We will affirm.

The parties met in the Fall of 1972. Their relationship developed and, after living together for about three years, they were married on April 17, 1976. The appellee had an antenuptial contract prepared by her attorney and, according to appellant, on April 3, 1976, when she asked him to sign, only explained that its effect would be that all property that each owned individually would be inherited by their respective heirs and that neither would have any claim or rights in the other's estate. Appellant does

---

1. All other aspects of the divorce were settled in the divorce decree and annexed property settlement.

2. The pertinent language of the court's order granting appellee's motion for summary judgment:

"IT IS FURTHER ORDERED, that judgment should be, and hereby is, entered in favor of Plaintiff and against Defendant on Defendant's claim to all or any portion of the separate properties owned by the Plaintiff prior to the marriage of the parties; to any portion of the income derived from said separate property during the marriage of the parties; and to all or any portion of the appreciation of said separate properties during the marriage of the parties."

not deny he signed the document,[3] a part of the record before us. The marriage lasted less than a year. Appropriate further facts will be mentioned during the course of the opinion. We will dispose of the issues in an order different than as stated by appellant.

We must, of course, review this case in the context of a summary judgment. The propriety of granting a motion for summary judgment depends on the correctness of the court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. *Johnson v. Soulis*, Wyo.1975, 542 P.2d 867. For purposes of ruling on a motion for summary judgment, a fact is material if proof of that fact would have the effect of establishing one of the essential elements of the cause of action asserted. *Johnson v. Soulis*, supra. Whether or not a fact is material depends upon the principle of law to be applied. *Timmons v. Reed*, Wyo.1977, 569 P.2d 112. We treat a motion for summary judgment as originally before us for disposition because we now have the same materials as did the district court. *Meuse-Rhine-Ijssel Cattle Breeders of Canada, Ltd. v. Y–Tex Corporation*, Wyo.1979, 590 P.2d 1306; *Seay v. Vialpando*, Wyo.1977, 567 P.2d 285; *Shrum v. Zeltwanger*, Wyo.1977, 559 P.2d 1384.

Appellant generally asserts that summary judgment was inappropriate because there were genuine issues as to material facts and because appellee was not entitled to judgment as a matter of law. In view of the rather unique set of circumstances presented to us here and in view of the limited scope of the issues as presented both in the trial court and in this appeal, we conclude that the summary judgment was proper.

Appellant first asserts that appellee defrauded him in that she told him that the contract only related to their mutual estates in the event of death. Even if this assertion is accepted at face value, appellant failed to show how it amounted to fraud. Against the backdrop of a motion for summary judgment, fraud must be demonstrated in a clear and convincing manner. *Johnson v. Soulis*, supra; *Twing v. Schott*, 1959, 80 Wyo. 100, 338 P.2d 839. Evidence relied upon to demonstrate an issue of fact must be admissible in evidence; parol evidence to vary the terms of a written instrument cannot be considered. *Johnson v. Soulis*, supra. The agreement is clear and unambiguous on its face that it " * * * waives, releases and relinquishes any and *all* claims and rights of every kind, nature or description that he * * * may acquire by reason of the marriage in the other party's property or estate * * *."[4] In this regard, we agree there was no material issue of fact. Appellant cannot rely on only a part of the agreement and ignore the remaining portions of the agreement which

3. The pertinent paragraphs:
 "1. Each party hereby *waives, releases and relinquishes* any and all claims and rights of every kind, nature or description that he or she may acquire by reason of the marriage in the other party's property or estate under the present or future laws of the State of Wyoming or any other jurisdiction, including, but not limited to:
 "(a) The right to elect to take against any present or future last will and testament of codicil of the other party;
 "(b) The right to take his or her intestate share in the other party's estate; and
 * * * * * *
 "3. East [sic] party during his or her lifetime shall keep and retain sole ownership, control and enjoyment of all his or her property, real and personal, free and clear of any claim of the other.

 "4. Each party acknowledges that he or she is entering into this agreement freely, voluntarily and with full knowledge; and the prospective husband acknowledges that he understands that his prospective wife has substantial wealth.
 "5. Each party shall upon the other's request take any and all steps, and execute, acknowledge and deliver to the other party any and all further instruments necessary or expedient to effectuate the purposes of this agreement.
 "6. This agreement contains the entire understanding of the parties. There are no representations, warranties or promises other than those expressly set forth herein."

4. Paragraph 1 of antenuptial, contract, footnote 3, supra.

he had a full opportunity to read before signing.

■ Appellant further assets there was deceit and overreaching by appellee and that he lacked understanding on the basis that he was given an abbreviated and incomplete description of the contract by appellee and because appellant was a simple man of little education who took appellee at her word. In the first instance there is no evidence presented that appellee was deceptive or overreached appellant. Questions of fraud and deceit cannot be reached when no evidence thereof appears in the record. Appellant seems to find comfort in appellee's deposition statement that an antenuptial agreement "would protect me and my possessions from a grasping husband" and that her attorney had advised her that the agreement would prevent her being "raked off," as evidence of deceit in that she did not so advise him at the time she asked him to sign it. Obviously the language of the agreement would afford that protection. That purpose was not concealed from the appellant and, though not expressed in those terms in the contract, it is readily apparent.

■ Appellant is no "babe-in-the-woods", but a grown man of maturity and experience, 57 years of age at the time, albeit, with little formal education. There is no showing that appellant is incompetent. He admitted an ability to read and understand the agreement and was not denied opportunity to do so. If he misunderstood the contract it was simply because he did not read it. He admitted that he had not read the agreement completely: "I only read part of it, she [appellant] explained what it was about." One who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or supposed that it was different in its terms, or that he took someone's word as to what it contained. 17 C.J.S. Contracts § 137, p. 871. Appellant presented absolutely no evidence that he was high pressured, influenced, rushed, or denied the opportunity to read the antenuptial contract.

" 'The rule is that the one who signs a paper, without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents * * *.' " *Sanger v. Yellow Cab Co., Inc.*, Mo.1972, 486 S.W.2d 477, 481.

■ It is negligence as a matter of law to not read a contract before signing. *Atkinson v. Englewood State Bank*, 1960, 141 Colo. 436, 348 P.2d 702. Also, *Shaw Equipment Co. v. Hoople Jordan Construction Co.*, Tex.Civ.App.1968, 428 S.W.2d 835, 842; *Ryan v. Ald, Inc.*, 1967, 149 Mont. 367, 427 P.2d 53, 55–56.

■ Finally, on the issue of disputed facts, appellant asserts that there was a failure to disclose assets. This, too, is belied by the appellant's own answers to interrogatories and deposition. He knew full well that appellee was a "woman of substantial wealth." This was disclosed to him by appellee herself and by his own observations before nuptials, and by the antenuptial contract itself.[5] Appellant's answers to interrogatories particularly disclose that while living together before marriage he learned that her income was about one million, nine hundred thousand dollars per year and she had extensive property holdings. Augmenting this, appellant, knowing his wife-to-be was wealthy, agreed to renounce *all* interest in her property. We are not dealing with a case where one accepts a disproportionately small amount because of an inadequate disclosure or deliberate concealment. Here, no matter how great appellee's wealth might turn out to be, and knowing it to be considerable, appellant plainly and unequivocally agreed that he wanted no part of appellee's riches under any circumstances.

■ There are a multitude of cases on the matter of financial disclosure in the

5. Paragraph 4 of antenuptial contract, footnote 3, supra.

context of an antenuptial contract. The decisions in those cases are as various, and in many cases as wondrous, as are these facts. See, Anno., "Setting Aside Antenuptial Contract Or Marriage Settlement on Ground of Failure of Spouse To Make Proper Disclosure of Property Owned," 27 A.L. R.2d 883 (1953).[6] On this matter, we find no authority more sensible and useful than that propounded in *In the Matter of the Estate of Borton*, Wyo.1964, 393 P.2d 808, 813, where this court held that the mere fact that detailed disclosure was not made will not necessarily void an otherwise properly executed antenuptial contract.[7] It is not necessary that the complaining spouse be furnished with a financial statement of net worth and income.

 Appellant's assertion that such a contract must be examined with close scrutiny has already been rejected by this court because it springs from the archaic presumption of inequality of husband and wife. *In the Matter of the Estate of Borton*, supra, 393 P.2d at 815. However that may be, the trial court's decision reflects that, as the presiding judge, he did closely examine the contract and all facts disclosed by the record. We will review the antenuptial contract much as we would any other contract. Under the clear circumstances presented here, we can only conclude that it was understandingly made and freely executed. Hence, the contract is valid and enforceable. Antenuptial contracts are governed by the same rules of construction as are applied to other contracts. *In re Luedtke's Estate*, 1974, 65 Wis.2d 387, 222 N.W.2d 643, 646; *In re Estate of Johnson*, 1969, 202 Kan. 684, 452 P.2d 286. The antenuptial contract was clear and unambiguous and there was no reason or purpose to be served in this case in the admission of parol evidence or applying rules of construction. In the matter of the *Estate of Kimball*, Wyo.1978, 583 P.2d 1274. We do not treat the husband and wife differently. The modern view is that they have like status in their contracts.

 There is no merit at all to appellant's claim that the contract does not cover appellee's income and appreciation of the value of her property during the marriage. The agreement specifically states that it releases "all claims and rights of every kind, nature or description" and each holds his or her property "free and clear of any claim of the other." We will not rewrite clear contracts. *Overcast v. Baldwin*, Wyo. 1976, 544 P.2d 464.

Under the circumstances here, there were no material issues of fact and appellee was entitled to judgment as a matter of law.

Affirmed.

---

6. For an informative general discussion of what antenuptial contracts are all about, see Lindey, Separation Agreements and Ante-Nuptial Contracts, § 90 (Rev.Ed. 1978).

7. This court, 393 P.2d at 813, cited with acceptance, *In re Ward's Estate*, 178 Kan. 366, 285 P.2d 1081, 1084:

"Appellant sets forth the general rule that there must be a fair disclosure of the nature and amount of the assets to which the intended bride contracts to renounce her statutory rights, and a failure to deal openly and fairly will render the contract unenforceable. We have no quarrel with this rule. However, where it appears an antenuptial contract was understandingly made and freely executed, and where there is an absence of anything showing fraud or deceit, the mere fact the intended husband did not disclose in detail to the intended wife the nature, extent and value of his property will not, of itself, invalidate the contract or raise a presumption of fraudulent concealment, and if from a consideration of all the facts concerning the situation of the parties, such as their respective ages, family conditions, property rights, etc., at the time the contract was made and the trial court concludes the intended wife was not overreached, the contract should be sustained. * * * *"