PADDEN, RESPONDENT, v. MURGITTROYD ET AL., APPEL-
LANTS.

(No. 3,776.)

(Submitted June 6, 1917. Decided June 12, 1917.)

[165 Pac. 913.]

*Warranty—Breach—Real and Personal Property—Fixtures—*
*Appeal and Error—Review—Ground of Objection—Instruc-*
*tions—Law of Case.*

Appeal and Error—Ground of Objection not Subject of Change on Appeal.
  1.  A ruling on the admission of evidence, though erroneous as made,
  may not be held erroneous on a ground different from that urged in
  the trial court.

Same—Instructions—Law of Case.
  2.  Where no criticism was made of instructions at the time of their
  settlement, they become the law of the case on appeal.

Warranty—Breach—Real and Personal Property—Fixtures.
  3.  In an action for damages for the breach of a warranty in a
  deed, in that a granary which was on the land when purchased
  had been subsequently removed by the vendor's tenant, who claimed
  it as his personal property, evidence *held* to show that the granary
  was the personal property of such tenant, and that this was known
  to the purchaser at the time the conveyance was made to him, both

from information received by him and the manner in which it rested
upon the land.

Real and Personal Property—Fixtures—Rule.

4.    As a general rule, the manner of an attachment to realty, the
adaptability of the thing attached to the use to which the realty
is applied and the intention of the one making the attachment, determine
whether the thing attached is realty or personalty.

[As to when and against whom fixtures may maintain the character
of personal property, see note in 84 Am. St. Rep. 877.]

*Appeal from District Court, Flathead County; T. A. Thompson, Judge.*

ACTION by Guy E. Padden against Dora Murgittroyd and another. From a judgment for plaintiff and an order denying a motion for new trial, defendants appeal. Reversed and remanded.

Cause submitted on briefs of Counsel.

*Mr. J. H. Stevens,* for Appellant.

*Mr. Paul M. Wishon,* for Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On August 28, 1913, the defendants executed a warranty deed to 80 acres of land situate in Flathead county, and delivered it to the Flathead County State Bank at Polson, Montana, with instructions to deliver the same to the plaintiff, upon his fulfilling on or before January 10, 1914, the conditions embodied in a written escrow agreement between the plaintiff and the defendants which accompanied the deed. These conditions were: That the plaintiff would pay the defendants $3,200 as the purchase price of the land, $1,000 upon the execution and deposit of the deed, $500 on or before January 10, 1914, with interest at the legal rate on $2,200 from the date of the deposit of the deed, until that time, and execute and deliver to defendants a first mortgage upon the land to secure the payment of $1,700, the balance of the purchase price, which was to become due and payable within five years. The plaintiff having fulfilled the

conditions, the deed was delivered to him and he entered into possession of the land on or about January 6, 1914. Prior to the sale to the plaintiff the land had been occupied by B. F. Kashner as lessee of the defendants. When the deed was executed the term of the lease had not yet expired. In order to be able to deliver possession to the plaintiff, the defendants secured from Kashner a release of his rights. Kashner owned adjoining lands. He had theretofore constructed thereon a granary, described as 14 feet in width by 16 feet in length, with a shingle roof sloping from a height of 11 feet in front to 9 feet in the rear. It was constructed upon heavy timbers, which were designed to serve as skids, so that it could be moved from place to place as occasion required. During the term of his lease, Kashner had moved it from his own land to that in controversy. When the lease was surrendered, the granary was not removed, but it was understood by Kashner and the defendants that Kashner could remove it later. No mention was made of the granary either in the deed to plaintiff or the agreement accompanying it. A short time after plaintiff took possession, Kashner sought to remove the granary to his own land. The plaintiff refused to permit him to do so and proceeded to convert it into a dwelling-house. Thereupon Kashner brought an action against plaintiff in a justice's court in claim and delivery to recover possession of it, with the result that he was awarded judgment for $150, the value of it, and costs taxed at $18.50. The plaintiff paid the judgment, and thereupon brought this action for damages, alleging that the covenants of warranty in the deed had been broken by defendants, in that the granary was a part of the lands, tenements and hereditaments conveyed by it to the plaintiff. The defendants, besides denying that they had breached the covenants in the deed as alleged, averred that at the time of the execution and delivery of the deed, the granary was personal property; that plaintiff knew this fact; that it was not owned by the defendants; and that it was not conveyed, or intended to be conveyed, by the deed. There was issue by reply. At the trial, the plaintiff had verdict and

judgment for $195.60 and costs, taxed at $156.60. Defendants have appealed from the judgment and an order denying their motion for a new trial.

The integrity of the judgment is assailed on the grounds that the trial court erred to the prejudice of the defendants in admitting certain evidence, and that the verdict is contrary to the evidence. We shall omit consideration of the propriety of the rulings admitting the evidence, for the reason that the argument of counsel in this court presents a question wholly different [1] from that raised by his objection at the trial. The plaintiff was permitted to testify as to what the result was in the justice's court, including the amount of the judgment recovered against him and the fact that he had paid it. The objection was that this was not the best evidence; whereas the argument of counsel goes to the competency of the evidence to show the value of the granary. In other words, the objection went to the degree of the evidence, and not to its competency. The ruling, though it may be conceded to have been erroneous as made, may not be held erroneous on a ground different from that submitted to the trial court.

The vital question in the case is presented by the second contention. The theory upon which the trial proceeded, as is disclosed by the instructions submitted to the jury, was this: That when one conveys land to another, presumptively all buildings permanently resting upon it are included unless there is some reservation or exception thereof made in the instrument of conveyance, and hence that the burden was upon the defendants to show that the granary was the personal property of Kashner, and that this fact was known to the plaintiff at the time [2] the conveyance was made to him. We shall not stop to consider whether the theory upon which the trial court proceeded was the correct one or not. Since no criticism was made of the instructions at the time of their settlement, they became the law of the case for the purpose of these appeals.

The defendants, we think, fully sustained the burden cast [3] upon them. That the granary was the personal property

of Kashner there was no controversy. Neither was there any controversy but that, as between him and the defendants, its character as such was fully understood and recognized. This was apparent both from the statements of the defendants and from the plan of its construction as well as the use for which it was intended, *viz.,* to be moved from place to place as occasion or convenience for its use required, as was usually the case with such structures in that community, for it was erected upon skids to facilitate this mode of use. It was not attached to the surface, nor was it resting permanently thereon. Neither was there any controversy but that in August, when the plaintiff was negotiating for the purchase from the defendants, he went upon the land and observed fully the situation of the granary, the method of its construction, and the use to which it was then devoted. It was situated, not in connection with other permanent buildings or improvements, but at an isolated place in the field where the grain crop for that year had been threshed. The testimony of several of the witnesses tended strongly to show that at the time of the negotiations in August, and later, before the plaintiff made his second payment and took possession, he was fully informed of Kashner's rights. Both the defendants and the notary who prepared the deed and the agreement testified categorically that the ownership of the granary was fully discussed, and that it was understood that it was not included in the transaction. These witnesses all testified that the plaintiff was fully informed that the land was under lease to Kashner; that he owned the granary; that after the papers had been prepared and executed ready for deposit it was noticed that they contained no mention of the granary; that it was suggested by the notary that they should be amended by incorporating the exception, but that the plaintiff insisted that this was not necessary, as the situation was fully understood. Prior to his taking possession and during the month of December, the plaintiff occupied other land of the defendants adjoining that in controversy, preparing to take possession.

He was then informed that the granary belonged to Kashner. He nevertheless moved it and converted it into a dwelling. Two other witnesses testified that during the winter following the purchase plaintiff admitted to them that while he knew that Kashner owned the granary, since it was not mentioned in the contract he could hold it and intended to do so. The statements of all these witnesses were denied by the plaintiff. If the verdict rested upon this conflicting testimony alone, there would be merit in the contention of counsel for plaintiff that it was the exclusive province of the jury to resolve the conflict, and that its resolution of it became binding on this court. When, however, we consider the undisputed evidence as to the ownership of the granary, the plan of its construction manifesting the use as well as the mode of use for which it was intended, and the manner in which it rested upon the land, we are compelled to the conclusion that the plaintiff fully understood the character of it as personal property, that the defendants did not intend to convey it to him, and that he did not acquire title to it by his purchase. His denial of the statements of the witnesses was insufficient to overcome the inference made necessary by the physical facts, which were not controverted.

In *Montana Elec. Co.* v. *Northern Valley Min. Co.,* 51 Mont. [4]   266, 153 Pac. 1017, it was said: "As a general rule, the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment, determine whether the thing attached is realty or personalty." Accepting this as the determinative rule, the conclusion must follow that the plaintiff knew from the beginning that the granary was the personal property of Kashner. True, the granary was resting upon agricultural land and was intended for the housing of grain; but the character of its construction and the manner in which it rested on the land wholly excluded the idea that it was the intention that it should become permanently affixed to it. The evidence therefore wholly fails to justify the verdict.

The judgment and order are therefore reversed and the cause is remanded to the district court, with direction to enter judgment for the defendants.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.