CASCADE ELECTRIC CO., INC., Appellant, v. ASSOCIATED CREDITORS, INC. et al., Respondents.

No. 8960.

Submitted October 10, 1950. Decided November 17, 1950.

224 Pac. (2d) 146.

Messrs. Swanberg and Swanberg, Great Falls, for appellant.

Mr. O. B. Kotz, Great Falls, for respondent Associated Creditors.

Messrs. Hall & Alexander, Great Falls, for respondent Leeper.

Mr. Swanberg and Mr. Alexander argued orally.

MR. CHIEF JUSTICE ADAIR:

This is an appeal from a judgment of dismissal entered in a suit seeking to establish the validity of an alleged mechanic's lien and to recover from defendants the amount claimed due thereon.

Montana Fish Meal and Oil Corporation, a corporation, hereinafter called the fish corporation, undertook to extract oil from rough fish to be captured in the waters of Montana, and to make meal therefrom for use in feeding livestock. The enterprise was new to this state and involved considerable experimentation.

At the outset of the undertaking the officers of the fish corporation leased from the Montana Power Company approximately 1.14 acres of land on the bank of the Missouri River near Great Falls, Montana. The lease was for the term of one year. It provided that it could be terminated by the lessee upon 90 days written notice to the lessor. It contained no provision for any renewal of the lease upon the expiration of the one-year term provided.

At first the fish corporation considered constructing a building, but later decided to delay such contemplated project until it could be determined whether or not sufficient quantities of fish could be caught at the site and if not the operations were to be moved to some other location on the Missouri river, for which reason it was determined that any plant used should be so designed that it could be moved when and if it should be deemed necessary or advisable.

Accordingly the fish corporation laid on top of the ground some 12″x12″ timbers on which it caused to be laid and nailed 2″ planks thereby making a platform about 28 to 30 feet wide and about 50 feet long. The platform had neither foundation nor roof. On the platform the fish corporation placed various machines and appliances, including a hammermill, cooker, dryer,

boiler and 10 to 12 electric motors, some of which were fastened to the platform by means of screws or bolts.

After the platform had been built and the machines and appliances placed thereon, certain electrical work and wiring was necessary to connect the machines so they could be operated by electrical power. To install such wiring the fish corporation employed the plaintiff, Cascade Electric Co., Inc., a corporation.

The work of installing the wiring was commenced April 11, 1947, and completed June 12, 1947.

When plaintiff commenced its work it constructed on one side of the platform a wall about six or seven feet high and from fifteen to twenty feet long, which served as a sort of instrument board, where plaintiff attached certain electrical equipment including some electric switches, and to support it and prevent its being blown down by the wind, braces made of 2x4s were nailed thereto to give it added strength. There being no roof to protect the electrical equipment and switches from the rain and elements, some were covered at times with canvas. The electrical wiring installed by the plaintiff could readily be disconnected from the various machines and appliances to which it was connected.

By the time plaintiff completed its work, the fish corporation had run out of money so that it could not and did not pay plaintiff for the labor and materials supplied and on August 15, 1947, plaintiff filed in the office of the county clerk and recorder of Cascade county, a purported notice of lien wherein it stated that for the work and labor so performed the fish corporation became and is indebted to it in the sum of $1,239.57.

The fish corporation was likewise indebted to numerous other creditors for equipment and merchandise purchased and for money borrowed. Six of such creditors assigned their respective claims totaling $5,333.37, to the defendant, Associated Creditors, Inc., which assignee corporation on August 26, 1947, commenced suit against the fish corporation thereon.

Pursuant to a writ of attachment issued in the suit, a levy was

made upon the machinery, appliances and other personal property of the fish corporation and subsequently judgment was rendered and entered against the fish corporation for the principal sum of $5,025 and costs amounting to $357.09. A writ of execution issued on the judgment by virtue whereof the defendant, D. J. Leeper as sheriff of Cascade county, levied upon, and, on October 28, 1947, sold at public auction for $6,046.59 all the machinery of the fish corporation. The property sold included a hammermill, cooker, dryer, boiler and various electric motors all taken from the large wooden platform on which they had been placed or from smaller movable platforms. The large wooden platform was not taken away. At the sheriff's sale, the property was sold to the defendant, Associated Creditors, Inc., as the high bidder, and later by it disposed of to various persons.

At the time the Associated Creditors, Inc., commenced its action on August 26, 1947, there was pending in the same district court, another action brought by the plaintiff, Cascade Electric Co., Inc., against the fish corporation to foreclose the claimed mechanic's lien here involved. Subsequently however at the time of filing its reply herein on December 30, 1948, the plaintiff Cascade Electric Co., Inc., voluntarily dismissed the foreclosure suit.

On June 2, 1948, plaintiff instituted this suit against the defendants Associated Creditors, Inc., and D. J. Leeper as sheriff of Cascade county, complaining that in levying upon and selling the property of the fish corporation defendants had deprived the plaintiff of its right to realize upon its lien to plaintiff's damage in the sum of $1,239.57 for which amount it prays judgment against defendants and also that its claimed lien be declared valid. The Montana Fish Meal and Oil Corporation was not made a party nor has it since become a party to the instant law suit and on December 6, 1947, the fish corporation was dissolved by its board of directors upon the ground that it had no assets and no intention of resuming operations.

Following a trial of the issues without a jury the court made

and filed written findings of fact and conclusions of law. The court found as facts:

"I. That all of the goods, wares and merchandise furnished and delivered by the plaintiff and all the services alleged to have been performed by the plaintiff were furnished and performed for and on behalf of the Montana Fish Meal & Oil Corporation. That the contractual indebtedness for said goods, wares and merchandise or services has never been established in any action against said Montana Fish Meal and Oil Corporation and that the Montana Fish Meal & Oil Corporation is a necessary and indispensable party to this action.

"II. That the asserted mechanic's and materialmen's lien described in plaintiff's complaint herein and offered in evidence over the defendants' objection as plaintiff's exhibit 3 is fatally defective and invalid in the following respects: (a) that said lien or lien statement does not contain a correct description of the property sought to be charged or a description sufficient to identify the property sought to be charged in this action with such a lien. (b) That said lien or lien statement does not contain the name of the owner of the property sought to be charged with such lien."

From the facts found the court made conclusions as follows:

"I. That plaintiff's action may not be maintained in the absence of the Montana Fish Meal & Oil Corporation as a party.

"II. That the mechanic's or materialmen's lien claimed by the plaintiff as the basis for its action is wholly invalid and unenforcible.

"III. That said lien offered in evidence over the objection of the defendants was not admissible in evidence against said defendants, or either of them.

"IV. That the defendants are entitled to a judgment dismissing plaintiff's complaint herein."

In accord with the court's findings and conclusions a judgment of dismissal was given and entered from which plaintiff has appealed.

It is well settled in this jurisdiction that in any suit seeking to enforce or establish the validity of a mechanic's lien the owner or person whose interest is sought to be charged is a necessary party to the action. Missoula Mercantile Co. v. O'Donnell, 24 Mont. 65, 72-74, and on rehearing 75-81, 60 Pac. 594 and 991; Wagner v. St. Peter's Hospital, 32 Mont. 206, 214, 79 Pac. 1054, 1055, and Pittsburgh Plate Glass Co. v. Culbertson Hotel Co., 62 Mont. 605, 205 Pac. 957.

Plaintiff's claimed lien is clearly defective in the particulars stated in the court's findings of fact. The notice of lien states it was for work in electrical wiring of "the certain Fish Meal Plant *building,* erected on a certain lot, piece or parcel of land hereinafter described" and also "this lien applies and attaches" to such lot, piece or parcel of land, whereas the evidence shows that there was no such *building* erected or existing on any lot or parcel of land to which the claimed lien could attach and that the labor and material were actually furnished for certain machinery and appliances not affixed or attached to any *building.* The notice of lien also states "the installation and the whole thereof was installed at the special instance and request of Verne F. Luhrsen, and Mack Hamilton, the representatives of such Montana Fish Meal Company and the person for whose immediate use and benefit the electrical wiring was installed." This is a very substantial variance for the debtor corporation was Montana Fish Meal and Oil Corporation and not "Montana Fish Meal Company" as is stated in the notice.

The movable platform on which the machinery and equipment were placed is not a structure within the meaning of the provisions of R. C. M. 1947, sec. 45-501.

At the time the platform was placed on the top of ground leased for only one year and at the time the machinery was placed thereon the evidence clearly shows that it was most uncertain as to how long the platform might be used at such location.

The witness, Fred Dufresne, a stockholder of the fish corporation, testified:

"Q. In other words, a temporary establishment? A. It was thought that the plant should be designed so it could be moved if it was found necessary, and also wherever the fish were found in large enough quantities to have volume production.

"Q. In other words, if they couldn't find enough in the Missouri River they could move it to some other place where there was enough? A. Yes, there was no transporting of fish a long distance."

The testimony of the witness Dufresne was corroborated by that of the witness Hamilton, treasurer of the fish corporation, and by the witness Earl Botsford, also a stockholder in such corporation.

The witness Botsford testified:

"Q. You understood they would have to move if the lease was cancelled? A. That is right.

"Q. For that reason, if they put up a building they would put it up in sections? A. Yes.

"Q. No building was ever started out there? A. No.

"Q. No foundation was laid for it? A. Unless you call that platform,—there was no concrete foundation there."

In Barnes v. Montana Lumber & Hardware Co., 67 Mont. 481, 486, 216 Pac. 335, 336, where this court held that a mechanic's lien could not be created against a threshing machine, we said: "We are therefore of the opinion that, as used in section 8339, supra [Rev. Codes of 1921, now R. C. M. 1947, sec. 45-501], the word 'structure' must be held to partake of the element which is common to the associated terms, notwithstanding other possible definitions thereof. This is especially true since the word 'structure' is ordinarily understood as meaning a building. * * * We are however, of the opinion that a 'structure,' to be lienable, must, at the same time the labor is performed upon it or the materials used in connection with its creation, improvement, or repair, be *attached to land.* In other words, without partaking of

that nature of fixtures which in certain instances makes them nonremovable portions of the real estate, the 'structure' must be *affixed to the land* or be of or appurtenant to it, before a valid lien can be secured thereon.'' (Emphasis supplied.) The Barnes Case, supra, is cited with approval in Interstate Lumber Co. v. Rider, 93 Mont. 489, 494, 19 Pac. (2d) 644, and it is also approved, but distinguished by reason of the provisions of R. C. M. 1947, sec. 67-210, in Caird Engineering Works v. Seven-Up Gold Min. Co., 111 Mont. 471 at page 489, 111 Pac. (2d) 267 at page 277. See also Healy v. Toles, 266 Mich. 584, 254 N. W. 213, 92 A. L. R. 749, which reaches the same conclusions as in the Barnes Case, supra.

R. C. M. 1947, section 67-209, provides: ''A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of building; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws.''

In Butte Electric Ry. Co. v. Brett, 80 Mont. 12, 257 Pac. 478, 480, the court in construing the above statute said: ''While a thing imbedded in the soil, a pole, ordinarily is a fixture (section 6669, R. C. 1921), certain tests are employed to ascertain whether as a fact an article attached to the realty is a fixture. Two of the tests are: The use or purpose of the annexation, which is entitled to much weight, and the intention of the party making the annexation, which is generally held to be the chief test. It is said that, if property is placed on land to improve it and make it more valuable, it is generally deemed a fixture, but, if attached for a use which does not enhance the value of the land, it remains a chattel. The intention to make an article a permanent accession to the realty must affirmatively and plainly appear; if the matter is left in doubt and uncertainty, the legal qualities of the article are not changed, and it must be deemed a chattel. 11 R. C. L. 1061-1062. By placing the poles in the streets and roads, the plaintiff did so for the purpose of transmitting

378

power to its cars. The poles are accessory to its business, not to the soil in which they stand.'' See also Standard Oil Co. v. Idaho Community Oil Co., 98 Mont. 131 at page 140, 37 Pac. (2d) 660; Padden v. Murgittroyd, 54 Mont. 1, 165 Pac. 913; Mattison v. Connerly, 46 Mont. 103, 126 Pac. 851; Moller v. Wilson, 8 Cal. (2d) 31, 63 Pac. (2d) 818, a case involving a pipe organ and construing a statute substantially the same as R. C. M. 1947, sec. 67-209; Reno Electrical Works v. Ward, 51 Nev. 291, 274 Pac. 196, 62 A. L. R. 247 and note; 22 Am. Jur., Fixtures, p. 775, sec. 61.

Obviously the machines, motors and other equipment placed ■ upon the platform, constructed as it was, were not fixtures within the meaning of R. C. M. 1947, sec. 67-209, so as to make them real estate and lienable. Accordingly the judgment is affirmed.

ASSOCIATE JUSTICES FREEBOURN, ANGSTMAN, METCALF and BOTTOMLY, concur.