S. A. LEIGLAND AND H. M. LEIGLAND, PLAINTIFFS AND APPELLANTS, *v.* GEORGE T. McGAFFICK AND LOIS McGAFFICK, HIS WIFE, UNION BANK & TRUST COMPANY, A CORPORATION, NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, AND HUSKY OIL COMPANY, INC., A CORPORATION, DEFENDANTS AND RESPONDENTS.

No. 9669.
Submitted June 9, 1958.   Decided April 20, 1959.
As Amended on Denial of Rehearing May 29, 1959.
338 Pac. (2d) 10037.

MR. JUSTICE ANGSTMAN dissented.

MR. JUSTICE CASTLES dissented in part.

Randall Swanberg, Great Falls, for appellants.
Randall Swanberg argued orally.
Ralph J. Anderson, Patrick F. Hooks, H. J. Luxan, Jr., Helena, for respondent.
Ralph J. Anderson, Patrick F. Hooks, H. J. Luxan, Jr., argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal from a judgment and decree in an action for foreclosure of a mechanic's lien.

The plaintiffs and appellants, S. A. and H. M. Leigland,

190

filed a complaint for foreclosure of a mechanic's and material-
men's lien for work and labor done and materials furnished
at the request of defendants and respondents. The complaint
alleged that commencing on or about the 25th day of June
1951, and terminating on or about the 26th day of November
1951, the plaintiffs had, at the special instance and request of
the defendant, George T. McGaffick, sold and delivered goods,
wares and merchandise to the defendant and performed work
and labor for the defendant in that the plaintiffs had built
an addition onto a gasoline service station owned by the de-
fendant. That the value of the goods, wares, merchandise, work
and labor was the amount of $11,669.09. The defendants Mc-
Gaffick answered the complaint and therein set forth two af-
firmative defenses:

The first defense relied upon by the defendants alleged that
on April 26, 1951, the plaintiffs and George T. McGaffick
entered into a written contract for the remodeling of a building
in Helena, Montana, known as the "Steamboat Block" for an
agreed price; that the defendants McGaffick occupied a por-
tion of the Steamboat Block, having located therein a tire shop;
that in order to fulfill the contract for remodeling the Steam-
boat Block, it was necessary that said tire shop be removed
from the Steamboat Block premises; that the agreed price of
remodeling the Steamboat Block was the sum of $188,385.05;
that such price was made up in part of bids received by the
plaintiffs from subcontractors; that George T. McGaffick at
the request of the plaintiffs consulted with certain of the sub-
contractors for the specific purpose of having said subcon-
tractors recompute their bids; that it was agreed between the
plaintiffs and the defendant, George T. McGaffick, that if such
consultations resulted in the subcontractors' bids being reduced,
then and in that event, such amount saved by the reduction
of the bids would be credited to defendants under their con-
tract for the remodeling of said Steamboat Block, and also
credited toward the construction of a tire shop to be built as
an addition to a filling station, located in Helena, and owned

by the defendants said filling station addition being that addition mentioned in the plaintiffs' complaint.

That pursuant to such request the defendant, George T. McGaffick, consulted with Reber Plumbing & Heating Company to recompute its bid; that the recomputed bid was lower than the original bid; that the amount that the bid was reduced was enough to completely cover the cost of construction of the aforementioned tire shop; that by reason of such saving the plaintiffs agreed with defendants that they would construct said tire shop at no cost to the defendants.

For a second affirmative defense, the defendants alleged that the actual construction of the tire shop was done in a careless, reckless and negligent manner, in that the plaintiffs did not prepare proper foundations under the floor; that subsequently the foundation sank, its floor became uneven, the walls cracked; and that as a result the building was worthless and of no value to the defendants.

The plaintiffs replied to the affirmative defenses generally denying all the material allegations therein contained.

After trial upon the issues so framed by the pleadings the court, sitting without a jury, rendered a judgment and decree in favor of the defendants and against the plaintiffs. From this judgment and decree the plaintiffs appeal.

On this appeal the first question which must be answered is one raised by the defendants.

The defendants contend that the last items of work done, being the items covering the work of the backfilling to fill up the trenches along side of the concrete footings of the said tire shop, which were excavated to put down the concrete footings, were not lienable, and that without this item the time for filing the lien had elapsed and therefore the plaintiff's lien was not filed in time. If the last items of work done are lienable, the lien was timely filed. If they were not, then in this case the last items of lienable work were performed in excess of 90 days prior to the filing of the lien. The last work, as aforesaid for which a lien is asserted, is for backfilling around

the foundation of the structure. The respondent contends that such work does not enter into the structure of a building, that it is not a constituent part of the building, and is not affixed or attached to the building. Citing as authority Missoula Mercantile Co. v. O'Donnell, 24 Mont. 65, 60 Pac. 594, 991, Holter Hardware Co. v. Ontario Mining Co., 24 Mont. 198, 61 Pac. 8, 81 Am. St. Rep. 421, and Cascade Electric Co. v. Associated Creditors Inc., 124 Mont. 370, 224 Pac. (2d) 146.

We believe such contentions take too narrow a view of the lien statutes.

We have held in Caird Engineering Works v. Seven-Up Gold Mining Co., 111 Mont. 471, 479, 111 Pac. (2d) 267, 272, that:

"This court is committed to the view that our lien statutes ▇▇ should receive a liberal construction to the end that the objects and purposes of the statutes may be carried out."

We believe it cannot be questioned under the circumstances that the work performed here was a necessary and integral part of the foundation work. Such backfilling is and was for the purpose of strengthening the foundation and enhances its value. It provides additional support for the building and thus enters into the structure. It is undisputable that the work was done upon the property against which the lien is asserted and still remains in place.

This court held as lienable items, in the Caird case, supra: (1) architectural services performed away from the premises upon which the work was being done; (2) charges for trucking materials to the job; (3) supervision work over construction; and (4) placing orders for machinery. If such items are lienable, no other conclusion can be reached but that backfilling to support foundation walls is a lienable item. The lien was timely filed. See Smith v. Gunniss, 115 Mont. 362, 376, 144 Pac. (2d) 186.

The plaintiffs on this appeal assert that the district court erred in denying them the lien which they sought to assert upon the property. The question presented by this appeal is whether

the evidence produced to support the affirmative defenses of the defendants was sufficient to support the judgment of the trial court.

On appeal from a judgment of the district court rendered ▆ in a case of this type, if substantial evidence to support the judgment was produced in the court below, this court will ordinarily sustain the lower court. It is therefore necessary for this court to closely examine the evidence produced.

To support their complaint for foreclosure of the asserted lien, the plaintiffs introduced a written contract dated the 29th day of June 1951, between the plaintiffs and the defendant, George McGaffick, wherein the plaintiffs promised to construct an addition to a service station following certain plans drawn by the engineering firm of Morrison-Maierle in consideration of the sum of $10,100 which sum was to be paid to the plaintiffs by the defendant, George McGaffick. This agreement was signed by one of the plaintiffs, S. A. Leigland, and by the defendant, George McGaffick.

The plaintiffs introduced evidence showing the quantity of merchandise, goods and wares furnished, and the costs thereof used in constructing the addition. They introduced evidence of the amount and cost of the labor performed in the construction of the addition. All of this evidence substantiated the plaintiffs' complaint and at the conclusion thereof a *prima facie* case for foreclosure of the mechanic's lien had been established.

The defendants then introduced evidence to establish their two affirmative defenses. The first affirmative defense, which they assumed the burden of proving, related entirely to an alleged "oral" contract. The evidence introduced was to the effect that the plaintiffs and the defendants had during the month of May 1951 entered into an "oral" contract wherein the plaintiffs agreed that they would build defendants an addition to their service station at no cost to the defendants.

The defendant, George T. McGaffick, testified that there was consideration for the "oral" contract and he admitted he had

signed the written contract, but dismissed it as being merely "for Leigland's records."

The making of the oral contract relied upon by the defendants preceded by over a month the making of the subsequent written contract. The testimony of the defendants concerning the "oral" contract was, as such "oral" agreements generally are when litigated, directly controverted by plaintiffs. If such were all that existed in this case, this court would be confronted with sustaining the trial court in its decision. But there is more. We have here a written contract, signed by the plaintiff and the defendant McGaffick made and entered into subsequent to the controversial "oral" contract. The written contract and not the "oral" contract controls this case. In the recent case of West River Equipment Co. v. Holzworth Construction Co., 134 Mont. 582, 335 Pac. (2d) 298, 302, 16 St. Rep. 80 and other authorities there cited, this court has held:

" 'The principle is well-established and of general application, subject to certain exceptions, that *when a contract has been reduced to writing the contents of such writing cannot be added to, contradicted, altered, or varied by parol or extrinsic evidence,* and that such writing supersedes all oral negotiations concerning its matter which preceded, accompanied, or led up to its execution. This was the rule at common law, and has been embodied in the statute law of this state.' * * *

And see Continental Oil Co. v. Bell, 94 Mont. 123, 21 Pac. (2d) 65."

R.C.M. 1947, section 13-907, states: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, *and not otherwise.*" Emphasis supplied.

Not one particle of evidence was offered to show that the written contract was changed by any legal method within the requirements of the above statute.

The written contract determines the rights, duties and liabilities of these parties. The plaintiffs have fully performed their part of the written contract. It is not void nor has any

proof been offered by the defendants to sustain the burden upon them to show that the fully executed contract is void. There is no proof to substantiate the defendants' first affirmative defense.

Thus if the decision of the trial court is to be upheld it must rest upon defendants' second affirmative defense that the building was negligently constructed and that by reason of such negligence the building is worthless to the defendants.

Pursuant to the terms of the written contract the building was constructed by the plaintiffs according to a drawing furnished the palintiffs by the defendants. This drawing entitled "An Addition To McGafficks Service Station, Helena, Montana" was prepared by a professional engineering firm. The drawing is labeled "Plan and Details." It contains on a single sheet of paper a floor plan, detail of window lintels, detail of sliding door lintels, typical wall section, the plans for the roof and a section designated A-A showing the side and foundation of the building.

The service station which this addition was to join had been built during 1950-1951. In fact the main building of the service station was still in the process of completion when the addition was commenced.

The engineering firm that drew the plan and details for the addition had drawn the plans for the original service station.

The addition was commenced in late June 1951. Its purpose was to hold equipment for a tire shop, this equipment was being moved into the building during the latter part of the summer. After or when the addition was completed, the exact time is controverted, the foundation of the addition settled in such a manner that the structure separated from the service station. The addition was built flush with the service station and the roofs were joined. As the foundation settled, a "V" opening appeared, the wide end of the "V" commencing at the place where the roof of the addition had been attached to the roof of the service station.

When this happened, the defendant had engineers look at

the building and recommend repairs, and the repair work was done under the engineers' supervision. The costs of this repair work constitute part of the amount claimed by the plaintiffs by their lien. The defendants pleaded and they offered testimony in an attempt to prove that the plaintiffs were negligent in the construction of the building.

The burden of proving the negligence so pleaded was upon the defendants. The proof offered was based upon the physical condition of the building. That is since the foundation and building had settled, the plaintiffs had improperly constructed the structure. The defendants would hold the plaintiffs responsible to construct a proper foundation under the addition and asserted such was set out in the plan and details. The plaintiffs' position was that they were obligated solely to build according to the plan and details furnished to them by defendants. This they did according to their interpretation of the plan. The defendants interpret the plan differently in that they contend that the foundation plan must be read to require that the plaintiffs must step down the foundation to solid footing no matter what depth this requires.

The general rule is set forth in 9 Am. Jur., Building and Construction Contracts, section 28, page 20, that "a construction contractor who has followed plans and/or specifications furnished by the owner, and the architect or engineer, and which have proved to be defective or insufficient, will not be responsible to the owner for loss or damage which results, at least after the work is completed, solely from the defective or insufficient plans or specifications, *in the absence of any negligence on the contractor's part,* or any express warranty by him as to their being sufficient or free from defects." Emphasis supplied.

The testimony as to the correct interpretation of the plans is very conflicting. Evidence of negligent action by plaintiffs in regard to the actual footings put in however is vague. Although one witness who testified that he saw the ground upon which the footings were being poured testified that the ground

was very "loose" and in his opinion the building would not rest upon it, yet other testimony was to the effect that the engineers working for the defendants on another contract examined the same ground and the footings through all phases of its construction yet they never mentioned anything about a possible defect in the soil.

In fact testimony showed that the engineers were consulted about whether or not a large rock should be moved out of the trench for the footings or integrated therein. (The question being important because if the rock was allowed to remain the footings in that place would contain less than three feet of concrete and thus would not be in strict conformance with the plan.) The engineers allowed the rock to remain in place. The testimony was very conflicting and would have been substantial for both the plaintiffs and the defendants were it not for two physical facts, the existence of which is not subject to conjecture or interpretation. While the defendants rest their claim of negligence by the plaintiffs upon the fact the building settled after completion, they sought to show that the cause for the settlement was apparent or should have been apparent to the plaintiffs while plaintiffs were putting in the foundation. Yet only opinion testimony was offered by defendants to support such contention. However, when the building settled, remedial steps were taken and the cause of the settling was sought.

To remedy the defect the plaintiffs dug underneath the foundation to put in underpinning. They dug to a depth of 20 feet. At that point they encountered buried gasoline storage tanks under the foundation. These tanks had rounded sides and the portion under the tanks had not been backfilled and compacted. Finding these tanks under the foundation was very significant, because these tanks were outlined on the plan and details furnished the plaintiffs by the defendants and their position on the drawing did not coincide with their actual position. The addition being built was planned so that these tanks would not be under the building. A wall of the addition was *indented* so that the foundation for the building would be some

six feet away from the end of the tanks. When the cause of the damage. is known to be the negligence of others rather than the plaintiffs there can be no substantial evidence offered to sustain a holding of negligence against the plaintiff. The defendants cannot prevail on their second affirmative defense.

One other matter must be settled upon this appeal. In the lower court, the Union Bank & Trust Company, the Northwestern National Bank of Minneapolis and Husky Oil Company were joined as necessary parties defendants because of a certain mortgage jointly held by the banks and Husky Oil Company and because of a lease and option held by defendant Husky Oil Company. The plaintiffs now concede that under the applicable law the mortgage of Union Bank & Trust Company, Northwestern National Bank of Minneapolis and Husky Oil Company have priority over the asserted lien of the plaintiffs, S. A. Leigland and H. M. Leigland. In addition, the plaintiffs now concede the lease of defendant Husky Oil Company has priority over the asserted lien of the plaintiffs.

The plaintiffs do not admit that the option of the defendant Husky Oil Company is prior to the plaintiffs' lien. We hold that the mortgage jointly held by the Union Bank & Trust Company, the Northwestern Bank of Minneapolis and Husky Oil Company is prior in right to the asserted lien of the plaintiffs. We hold that the lease of Husky Oil Company is also prior in right to the plaintiffs' asserted lien.

The question is presented whether the mechanic's lien here upheld is to come ahead of the option to purchase the premises existing in the lease of the premises to Husky Oil Company. The lease containing the option had been recorded prior to the filing of this mechanic's lien but the option had not been exercised at the time the lien of Lieglands was filed.

In Ryan v. Bloom, 120 Mont. 443, 452, 186 Pac. (2d) 879, 883, this court quoting from 55 Am. Jur., section 27, page 492, said:

" 'Until the holder or owner of an option for the purchase of property exercises it, *he had nothing but a mere right to*

*acquire an interest, and has neither the ownership of nor any interest in the property itself'."* Emphasis supplied.

Such a mere "right to acquire an interest" does not constitute an "encumbrance." The encumbrance must exist at the time of the filing of the lien. The exercise of the option will not relate back to the date the lease was given to give priority to the option over an intervening mechanic's lien. And see Sheehy v. Scott, 128 Iowa 551, 104 N.W. 1139, 4 L.R.A., N.S., 365. The lien hereby decreed shall be subject to the mortgage of the Union Bank & Trust Company, Northwestern Bank of Minneapolis and Husky Oil Company and to the lease of Husky Oil Company.

The decision of the trial court is reversed, and the clerk of the district court for Lewis and Clark County is hereby directed to enter judgment in plaintiffs' favor for the sum of $11,669.09, together with statutory interest as prayed for in the prayer of the plaintiffs' complaint.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICE ADAIR, concur.

MR. JUSTICE ANGSTMAN, (dissenting).

I do not agree with the foregoing opinion. On the principal question the majority opinion goes off on a point not involved in the case. It points out that the contract for the construction of a tire shop as an addition to a service station was in writing and that defendant, as a defense, relied on an oral contract varying the terms of the written contract contrary to section 13-907 and cases following the rule there stated. There are several reasons why this question is not properly before us:

(1) Plaintiffs made no objection to the oral evidence;

(2) The record does not indicate that plaintiffs in any manner raised the question in the lower court or brought it to the attention of the trial judge;

(3) Plaintiffs have not raised the question in this court, either in the transcript or brief.

(4) No assignment of error is made indicating a reliance on this point; and

(5) The trial court should not be put in error on a matter not presented to it.

But if the question is properly before us it must be resolved against the plaintiffs on its merits.

The written contract which the majority treat as so sacred contains this clause: "This contract to be void upon completion of negotiations for Steamboat Block job."

Admittedly the negotiations for the Steamboat Block job became completed and that fact rendered the written contract void with respect to the construction of the tire shop.

It should be pointed out that the rule is that where a contract is partly printed and partly written, as here, the written matter controls over the printed matter. Section 13-717, R.C.M. 1947. Here the clause above noted was written into the contract which was otherwise in printed form. Likewise this written matter was inserted in the contract by plaintiff Leigland and should be construed most strongly against him. Section 13-720, R.C.M. 1947.

The only thing left regarding the tire shop after the completion of negotiations on the Steamboat Block job was the oral agreement which has since been fully executed. Under these facts it is not strange that learned counsel representing plaintiffs did not object to the oral evidence or make any point with reference to its admissibility either in the lower court or here.

The written contract fell of its own weight when negotiations regarding the Steamboat Block job were completed. There then remained but the oral contract which measured the rights and liabilities of the parties. What then are those rights and liabilities?

McGaffick testified in substance that whatever he could save out of bids of the subcontractors on the Steamboat Block would be credited as payment on the contract for the tire shop. He testified that Reber, the plumber on the Steamboat Block job had reduced his bid by $5,500 or $5,700 and that plaintiff

Leigland told him that he had been able to make sufficient savings on the subbids so that the tire shop would not cost McGaffick anything. He made the same statement to Mrs. McGaffick at a different time. Mr. Leigland denied having made any such agreement but a witness for defendant, Claude McGuinness, testified that Leigland told him that he, Leigland, had made a side agreement with McGaffick. At most the denial of this arrangement by Mr. Leigland presented a question of fact to be determined by the trier of the facts.

It should be said too that there is nothing improbable or unreasonable about the arrangement testified to by Mr. McGaffick. Bidders and subbidders on construction work, as a rule, do not give themselves the worst of it in their bidding.

If, by renegotiation, the subcontractors could be induced to reduce their bids by about six percent enough could be saved to take care of the cost of the tire shop without altering the amount to be received by plaintiffs and that is exactly what happened according to the evidence submitted by and on behalf of defendant. Such an arrangement simply reduced the overhead expenses that were to be paid by plaintiffs.

In my opinion there was ample evidence to sustain the conclusion of the trial judge and hence the judgment should be affirmed. Since the judgment should be affirmed because of the first affirmative defense it ordinarily would be unnecessary to discuss the second affirmative defense. However, since the majority here have ordered judgment in favor of plaintiff I think it is appropriate to state that I do not agree with what my associates have to say regarding the second defense.

I think there was sufficient evidence of negligence to make the question one for the trier of the facts. Should it be found however that there was negligence in the construction of the tire shop as alleged, defendants would merely be entitled to damages therefor. See Tomson Architectural and Engineering Law, Chapter 25, page 339. Hence even if there be no merit to the first defense (a point which I deny) still this court should not order judgment for plaintiffs, but should remand the cause

with directions to grant a new trial as to the second defense to the end that, if negligence be found, damages may be then assessed.

MR. JUSTICE CASTLES: (dissenting in part).

I concur in the reversal of the judgment, but I dissent in entry of judgment by this court. I agree with the majority opinion as to the items being lienable items. I also agree that the judgment should be reversed, but I believe a new trial should be ordered on the question of negligence in the construction.

On Motion for Rehearing

Rehearing denied.

MR. JUSTICE ANGSTMAN: (dissenting).

While opinion evidence is not looked upon with favor it is still admissible upon proper foundation and is sufficient to prove a fact. Irion v. Hyde, 110 Mont. 570, 105 Pac. (2d) 666.

I think opinion evidence should not be condemned in wholesale fashion as is done by the amendment made to the foregoing opinion on motion for rehearing. Compare 32 C.J.S. Evidence, section 527, page 226.

In my opinion the motion for rehearing should be granted.